Jones, J.
We hold that in arbitrations which proceed under the authority of the Taylor Law, the scope of the particular arbitration clause, and thus whether the question sought to be submitted to arbitration is within or without the ambit of that *511 clause, is to be determined by the courts. In making such determinations the courts are to be guided by the principle that the agreement to arbitrate must be express, direct and unequivocal as to the issues or disputes to be submitted to arbitration; anything less will lead to a denial of arbitration.
In this case Liverpool Central School District and the United Liverpool Faculty Association entered into a collective bargaining agreement which provided a grievance procedure, the fourth and final step of which called for submission of an unresolved grievance to arbitration. Tracking the provisions of subdivision 4 of section 682 of the General Municipal Law, the school district and the faculty association defined a grievance as follows: "Grievance shall mean any claimed violation, misinterpretation, or inequitable application of the existing laws, rules, procedure regulations, administrative orders or work rules of the District, which relates to or involves Teachers’ health or safety, physical facilities, materials or equipment furnished to teachers or supervision of Teachers; provided, however, that such term shall not include any matter involving a Teacher’s rate of compensation, retirement benefits, disciplinary proceeding or any matter which is otherwise reviewable pursuant to law or any rule or regulation having the force and effect of law.”
In November, 1974, Mrs. Lorraine Gargiul, an elementary school teacher, was obliged to take sick leave due to illness. In February, 1975 she notified the school district that she would be able to return to her teaching duties the following month. On February 26 she was advised that pursuant to the provisions of section 913 of the Education Law she would be required to submit to a complete medical examination by the school district physician, Dr. Paul Day, before being permitted to return to the classroom. The teacher took the position that she would participate only in an examination by a female physician. Following further correspondence of similar tenor, on March 17, 1975 the board of education passed a resolution directing her to be examined by Dr. Day before returning to her teaching responsibilities, if, after reviewing her health history, he determined that such examination was necessary. On the same day, based on the teacher’s refusal to be examined by Dr. Day, she was placed on leave of absence without pay until the matter was resolved.
On April 10, 1975 the faculty association instituted grievance procedures on behalf of Mrs. Gargiul. When the issue *512 was not resolved, the faculty association demanded arbitration in accordance with the provisions of the collective bargaining agreement. The school district promptly applied for a stay of arbitration which was granted at Special Term. The Appellate Division reversed. We now reverse the determination of that court and reinstate the disposition of Special Term.
It will be useful to place this case, and indeed all arbitration under the Taylor Law, in a broader context. Generally speaking, as the law of arbitration between private parties has developed and progressed, a difference in perspective and approach has evolved between arbitration in commercial matters and arbitration in labor relations. In the former it is the rule that the parties will not be held to have chosen arbitration as the forum for the resolution of their disputes in the absence of an express, unequivocal agreement to that effect; absent such an explicit commitment neither party may be compelled to arbitrate (Gangel v DeGroot, 41 NY2d 840, 841; Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], 306 NY 288, 289, 292). In the field of labor relations, by contrast, the general rule is the converse. Because of the recognition that arbitration has been demonstrated to be a salutary method ° of resolving labor disputes, because of the public policy (principally expressed in the Federal cases) which favors arbitration as a means of resolving such disputes, and because of the associated available inference that the parties to a collective bargaining agreement probably intended to resolve their differences by arbitration, the courts have held that controversies arising between the parties to such an agreement fall within the scope of the arbitration clause unless the parties have employed language which clearly manifests an intent to exclude a particular subject matter (Matter of Howard & Co. v Daley, 27 NY2d 285, 289-290; Matter of Long Is. Lbr. Co. [Martin], 15 NY2d 380, 385).[1]
Arbitration agreements that derive their vitality from the Taylor Law (Civil Service Law, art 14) are sufficiently different that they cannot properly be categorized under either of these headings. Initially we observe that our court has never held *513 that boards of education, unless authorized by specific legislation, are free to delegate to arbitrators the resolution of issues for which the boards have official responsibility. The enactment of the Taylor Law, establishing authority for the use of voluntary arbitration, confirmed rather than vitiated the principle of the nondelegable responsibility of elected representatives in the public sector. Hence, we approach consideration of the scope of arbitration clauses in public employment from this perspective.
When challenge is raised to the submission to arbitration of a dispute between employer and employee in the public sector the threshold consideration by the courts as to whether there is a valid agreement to arbitrate (CPLR 7503, subd [a]) must proceed in sequence on two levels. Initially it must be determined whether arbitration claims with respect to the particular subject matter are authorized by the terms of the Taylor Law. The permissible scope of arbitration under that law is variously limited (Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614, 616-617; Syracuse Teachers Assn. v Board of Educ., 35 NY2d 743, 744; Board of Educ. v Associated Teachers of Huntington, 30 NY2d 122, 130). If, of course, the subject matter of the dispute between the parties falls outside the permissible scope of the Taylor Law, there is no occasion further to consider the language or the reach of the particular arbitration clause (Matter of Candor Cent. School Dist. [Candor Teachers Assn.], 42 NY2d 266; Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774).
If it is concluded, however, that reference to arbitration is authorized under the Taylor Law, inquiry then turns at a second level to a determination of whether such authority was in fact exercised and whether the parties did agree by the terms of their particular arbitration clause to refer their differences in this specific area to arbitration. In the field of public employment, as distinguished from labor relations in the private sector, the public policy favoring arbitration—of recent origin—does not yet carry the same historical or general acceptance, nor, as evidenced in part by some of the litigation in our court, has there so far been a similar demonstration of the efficacy of arbitration as a means for resolving controversies in governmental employment. Accordingly, it cannot be inferred as a practical matter that the parties to collective bargaining agreements in the public sector always *514 intend to adopt the broadest permissible arbitration clauses. Indeed, inasmuch as the responsibilities of the elected representatives of the tax-paying public are overarching and fundamentally nondelegable, it must be taken, in the absence of clear, unequivocal agreement to the contrary, that the board of education did not intend to refer differences which might arise to the arbitration forum. Such reference is not to be based on implication.
We turn then to the appeal now before us to make the necessary judicial determinations both with respect to Taylor Law authorization and as to the scope of this arbitration clause, i.e., whether Mrs. Gargiul’s present complaint falls within the contract definition of grievance. We have no difficulty at the first level in concluding that there is nothing in statute, decisional law or public policy which would preclude the board of education, acting in behalf of the district, and the association, should they agree to do so, from referring disputes of the present nature to arbitration.
At the second level, we address the particular language employed by the parties for the articulation of their agreement to arbitrate. Surely their definition of grievances does not approach the breadth of provisions which in other contexts are referred to as "broad arbitration clauses”. This clause is explicitly a limited one. Indeed in form it expresses two separate agreements. First, the parties agree that certain disputes ("claimed violation, misinterpretation or inequitable application of existing laws, rules, procedure, regulations, administrative orders or work rules of the District which relate to or involve Teachers’ health or safety, physical facilities, materials or equipment furnished to teachers or supervision of Teachers”) shall be submitted to arbitration. In the same paragraph they then agree that other disputes shall not be referred to arbitration ("any matter involving a Teacher’s rate of compensation, retirement benefits, disciplinary proceeding”).[2] Thus, the question is not to determine the outer boundaries of a single definition; the problem is rather to determine into which of two different classifications the present dispute falls, or more precisely in this instance, how it shall be treated when it may reasonably be included within both groups.
*515 As is evident from the arguments pressed by the parties, as well as from the decisions in the courts below, the present controversy could be classified both in surface description and substantive context in either category. On the one hand, although contending principally that the issue of arbitrability is for the arbitrator and not for the courts, the faculty association has labeled the board’s action a claimed violation or inequitable application of existing laws and rules relating to the teacher’s health, thus in the included category. On the other hand, the school district classifies the dispute as a matter involving disciplinary proceedings, in the excluded category. The labels attached by the parties, each evidently for its own advantage, can never be determinative. A very reasonable assertion can be made that this particular controversy falls within both the included and the excluded categories.
In this circumstance, we cannot conclude that the present dispute falls clearly and unequivocally within the class of claims agreed to be referred to arbitration. Accordingly, the application of the school district for a stay of arbitration was properly granted.
For the reasons stated, the order of the Appellate Division should be reversed, without costs, and the order of Supreme Court, Onondaga County, reinstated.

. In our view the not infrequent reference to a "presumption of arbitrability”, whilé understandable, does not advance analysis and indeed in some instances serves rather to obfuscate. In the field of labor relations, however, experience has demonstrated that an inference may usually be drawn that the signatories to a collective bargaining agreement between private parties intended to submit their differences to arbitration.

. No claim is made that the present dispute falls within the very broad category of "any matter which is otherwise reviewable pursuant to law”.