ANGELICA CENTRAL SCHOOL DISTRICT, Respondent, v ANGELICA TEACHERS' ASSOCIATION et al., Appellants.

Fourth Department, November 14, 1977

*Bernard F. Ashe (Gerard John DeWolf* of counsel), for appellants.

*Wesley J. Serra, P. C. (Patricia K. Fogarty* of counsel), for respondent.

MARSH, P. J. Respondents appeal from an order of Special Term which granted a stay of arbitration to petitioner.

It is alleged in the petition that appellant teachers' association entered into a collective bargaining agreement with respondent school district for the school year 1975-1976. On April 12, 1976 the board voted to deny tenure to individual appellant, probationary teacher LaVerne Chadderdon. On May 26, Chadderdon initiated the grievance procedure outlined in article XX of the collective bargaining agreement concerning dismissal of nontenured teachers. The supervising principal denied the grievance on the ground, among others, that he had no legal authority to review under the grievance procedure the tenure decisions of the board. His decision was appealed to the board which denied the grievance and a

demand for arbitration was served on the board on June 30, 1976.

Article XX of the collective bargaining agreement provides as follows:

"(2) Dismissal of Non-Tenured Teachers.

"Before a teacher is dismissed for a non-disciplinary reason, he shall be given notice no later than April 1. The teacher shall be advised orally of the specific reasons for this contemplated action. In cases involving teacher deficiencies: the teacher shall be given a minimum of thirty days in which to correct his deficiencies. If the perceived deficiencies are not sufficiently corrected and dismissal action is to be implemented, the teacher will be so notified no later than May 1. At this time the teacher may request that the reasons for his termination be given in writing.

"(3) If the teacher is not satisfied with the reasons given, he may request a hearing before the Board of Education within thirty days, at which he may be represented by counsel of his choice and present any evidence relevant to his performance or character. The Board shall render its decision within thirty days of the hearing. This decision shall not be subject to arbitration as defined elsewhere in this agreement. If the teacher requests that the reasons of the Board's action be given in writing, such reasons shall become part of the teacher's permanent employment record. The teacher shall also have the opportunity to enter into his record his response to the reasons advanced by the Board."

Appellants assert that this procedure has application to a denial of tenure at the expiration of a probationary term and that the procedures for review which provide for an opportunity to correct deficiencies have a logical contractual and practical relevance to the tenure decision of the board. The agreement defines what types of claims are a proper subject for the grievance machinery and, failing resolution by such machinery, which may be pursued to binding arbitration.

Subdivision 2.1 of section II of article XXI provides:

"Section II—Definition.

"2.1 A *grievance* is claim by a teacher or group of teachers in the negotiating unit based upon any event or condition affecting their welfare and/or terms or conditions of employment. However, only those grievances defined in section (3) shall be subject to arbitration."

Subdivision 5.4 of section V of article XXI provides:

"5.4 Stage 4: Arbitration.

"Any dispute involving an alleged violation, misapplication, or misinterpretation of this agreement which cannot be resolved through the grievance procedure shall be subject to decision by an arbitrator selected according to the rules and regulations of the American Arbitration Association. The decision of the arbitrator shall be final and binding on both sides. The costs and expenses of arbitration shall be shared equally by the parties. The arbitrator shall neither add to, subtract from, nor modify the provisions of this Agreement. He shall confine his decision solely to the application and/or interpretation of this Agreement."

The arbitration clause clearly encompasses the dispute concerning the review provisions and must be given effect unless public policy or a statutory provision prohibits it as an infringement upon the board's prerogative to make the ultimate decision to grant or deny tenure unfettered by the collective bargaining agreement *(Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774; see *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.),* 42 NY2d 509).

In *Cohoes* the Court of Appeals determined that a collective bargaining agreement which prohibited discharge without just cause at the end of the probationary period was unenforceable as contrary to the Education Law and public policy, but found acceptable provisions that augmented evaluation procedures concerning the ultimate tenure decision (p 778): "We have held, however, that the bargained-for right to supplemental procedural steps preliminary to the board's final action to grant or to withhold tenure is not to be rendered a nullity because of the board's right to deny tenure without explanation *(Board of Educ. v Bellmore-Merrick United Secondary Teachers,* 39 NY2d 167). In the present case the arbitrator found a failure to follow more structured evaluation procedures. Accordingly, we see no occasion to disturb the award as modified, pursuant to which the school district is required to reinstate Mr. Hagen without tenure for one additional year to enable the board to re-evaluate his performance in accordance with the procedures specified in the agreement *(Board of Educ. v Bellmore-Merrick United Secondary Teachers,* 39 NY2d 167, *supra)."*

This procedural determination of *Cohoes* was followed in

*Matter of Candor Cent. School Dist. (Candor Teachers Assn.)* (42 NY2d 266, 272) wherein it was stated: "It is also relevant here, however, that in *Cohoes* we further held that a board of education in a collective bargaining agreement may limit or restrict its right to terminate a probationary appointment during the probationary period or agree to supplementary procedural steps preliminary to the termination of a probationary appointment—in that case 'more structured evaluation procedures' (40 NY2d, at p 778). It follows, then, in this case that the school district's commitment to the procedural aspect of the dismissal clause is not to be set aside as against public policy. Accordingly, there is no basis to interfere with the determination of the arbitration panel that the school district had violated this component of its agreement with the teachers association and that Mrs. Miller was entitled to a remedy for such violation."

The instant dispute concerns an interpretation of the collective bargaining agreement which subdivision 5.4 of section V of article XXI provides be resolved by binding arbitration. Augmentation of the review procedures prior to the ultimate decision on tenure by the board is not prohibited by public policy *(Cohoes City School Dist. v Cohoes Teachers Assn., supra; Matter of Candor Cent. School Dist. [Candor Teachers Assn., supra])*.

The order appealed from staying arbitration should be reversed and respondent directed to proceed to binding arbitration.

HANCOCK, JR., J. (dissenting). I respectfully dissent, and would affirm the order staying arbitration for the reasons stated by Special Term. This case involves the question left unanswered by the decision of the Court of Appeals (modfg order of App Div) in *Matter of Candor Cent. School Dist. (Candor Teachers Assn.)* (42 NY2d 266)[1] viz., whether the

---

1. In *Candor (supra)* the Court of Appeals considered only the question of whether the arbitrators had exceeded their powers and *not* whether the dispute was arbitrable. In modifying the order of the Appellate Division, it was concerned only with the content of the award (p 270): "No challenge was or is now raised to the propriety of recourse to arbitration as provided in the collective bargaining agreements. The attack by the school district is focused only on the content of the award" and further (p 271): "We proceed, therefore, on the assumption that the terms of the dismissal clause were applicable to the termination of Mrs. Miller's employment."

Here, however, in its petition to stay arbitration, respondent has directly challenged the applicability of article XX of the collective bargaining agreement to the school board's failure to grant appellant tenure.

Appellate Division's interpretation of a dismissal clause, similar to the clause contained in article XX of the collective bargaining agreement involved here, as not applying to the automatic expiration of a probationary teacher's contract, was correct. In holding the dismissal clause inapplicable, the Appellate Division stated (52 AD2d 400, 402): "By their irrational interpretation, the arbitrators have escalated the 'dismissal clause' into a provision to submit failure to achieve tenure to binding arbitration. Tenure is not a matter which can be submitted to binding arbitration. [Citation omitted.] The irrationality of the arbitrators' construction is demonstrated when we realize that Miller was not dismissed by petitioner. Miller's employment ceased at the termination of her probationary period when she failed to obtain tenure. Under the circumstances, petitioner was not authorized to award tenure to Miller. After the District Superintendent of Schools notified her she was not being recommended for tenure, petitioner was powerless to grant her tenure. Her employment ceased by operation of law at the end of her probationary period and not by a dismissal by petitioner."

Following the precept of the Court of Appeals in *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.)* (42 NY2d 509, 514) that in a public sector collective bargaining agreement, "it must be taken in the absence of clear, unequivocal agreement to the contrary, that the board of education did *not* intend to refer differences which might arise to the arbitration forum", I must conclude: (1) that the lapse of appellant Chadderdon's probationary appointment and the termination of his services because tenure had not been granted was not a dismissal calling for the procedures set forth in article XX; and (2) that the board's failure to follow the article XX procedures presented no arbitrable grievance. (See *Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn.,* 59 AD2d 1042.)

Nor did the parties in the arbitration clause of the agreement (art XXI, § V, 5.4) contract to submit to the arbitrator legal questions such as those presented here in the construction of article XX. In my opinion, the clause making arbitrable an "alleged violation, misapplication, or misinterpretation of [the] agreement which cannot be resolved through the grievance procedure" (art XXI, § V, 5.4), refers to an action or

decision of the board, which could constitute a grievance[2] and not to questions concerning legal interpretations. Similar arbitration clauses and definitions of "grievance" were contained in the collective bargaining agreements in *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.) (supra)* and *Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn. (supra)* where the disputes were held not arbitrable.[3] It should be noted that the agreements in *Liverpool (supra), Honeoye Falls (supra)* and in this case all lacked the unequivocal language contained in the *Candor* agreement[4] in which the parties specifically contracted "to submit to arbitration disputes as to the interpretation and application of the collective bargaining agreement". *(Matter of Candor Cent. School District [Candor Teachers Assn.], supra,* p 271.) Thus, in the case at bar, because of "the absence of clear, unequivocal agreement to the contrary" it must be presumed that the parties "did *not* intend to refer differences which might arise [concerning the legal interpretation of the collective bargaining agreement] to the arbitration forum." *(Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. v United Liverpool Faculty Assn., supra.)*

DILLON, DENMAN and WITMER, JJ., concur with MARSH, P. J.; HANCOCK, J., dissents and votes to affirm in an opinion.

---

2. "Grievance" is defined as a "claim by a teacher or group of teachers in the negotiating unit based upon any event or condition affecting their welfare and/or terms or conditions of employment. However, only those grievances defined in section (3) shall be subject to arbitration." (Collective bargaining agreement, art XXI, § II, subd 2.1.)

3. In *Liverpool,* the agreement provided that the teacher and/or association, if not satisfied with the decision at Stage 3 "may submit the grievance to arbitration". Grievance is defined as "any claimed violation, misinterpretation or inequitable application of the existing laws, rules, procedure regulations, administrative orders or work rules of the District".

In *Honeoye,* the arbitration clause provided "only contractual agreements and disciplinary actions will be covered by Stage 4, other grievances will end at Stage 3." Grievance is defined as "a claim by any teacher or group of teachers in the negotiating unit based upon any event or condition affecting their welfare and/or terms and conditions of employment, including but not limited to, any claimed violation, misinterpretation, misapplication or inequitable application of law, rules or regulations having the force of law, this agreement, policies, rules, by-laws, regulations, directions, orders, work rules, procedures, practices or customs of the Board of Education."

4. The arbitration clause in the *Candor* agreement provided:

"5th Stage—Binding Arbitration.

"The recommendations of the Board of Review will be accepted and be binding on both parties only as to the interpretation and application of the agreement itself."

Order reversed, without costs, and respondents directed to proceed to binding arbitration.