■ In the Matter of BOARD OF COOPERATIVE EDUCATIONAL SERVICES OF NASSAU COUNTY, Respondent-Appellant, v CENTRAL COUNCIL OF TEACHERS, Appellant-Respondent.—In a proceeding pursuant to CPLR article 75 to stay arbitration (1) the Central Council of Teachers appeals from so much of an order of the Supreme Court, Nassau County, entered July 22, 1976, as stayed arbitration of Grievances Nos. 1 and 2, and (2) petitioner cross-appeals from so much of the said order as denied a stay of arbitration with respect to Grievance No. 3. Order modified, on the law, by deleting therefrom the provision which denied the stay as to Grievance No. 3 and by substituting therefor a provision granting petitioner's application for a stay of arbitration with respect to the said grievance. As so modified, order affirmed, with $50 costs and disbursements to petitioner (BOCES). Arbitration of Grievances Nos. 1 and 2 was properly stayed. The central council's protestations notwithstanding, it is clear that the essence of Grievance No. 1 is a challenge to BOCES' unilateral determination to increase class size in its special education program, not its alleged failure to follow contractual pupil placement procedures. The contract sets up a special grievance procedure for class size disputes and the council concedes that the final arbiter thereunder is the superintendent, not an arbitrator of the American Arbitration Association. Even were we to find that the sole issue was pupil placement procedures, it appears that the same special grievance procedure would have to be followed, which again leaves the final determination to the superintendent. Grievance No. 2 relates to the elimination of 30 classroom teaching positions as a result of the increase in class size. Here, the fundamental defect is the absence of any job security provision in the parties' collective bargaining agreement. The council's reliance upon the superintendent's January, 1973 letter of intent, issued in accordance with the then effective contract, is misplaced. It is limited by its terms to excessing by reason of class size increases provided for in the 1971–1973 contract; it was not reiterated or incorporated into the 1973–1975 agreement, which was extended to cover 1975–1976 by a memorandum of understanding with certain, nonpertinent, changes. Even if it is deemed to be in continuing force and effect, the letter would be unenforceable as a job security guarantee because of its unlimited duration and failure to unambiguously protect the teachers against excessing by reason of budgetary limitations (see *Matter of Board of Educ. v Yonkers Federation of Teachers,* 40 NY2d 268; *Yonkers School Crossing Guard Union of Westchester Ch., CSEA v City of Yonkers,* 39 NY2d 964). Arbitration of Grievance No. 3, however, should also have been stayed. That grievance charges a violation of a specific contractual limitation on class size. The exact contractual language, which follows provisions detailing class size and student placement review procedures, is: "In no event, however, shall class size exceed

the Commissioner of Education Regulations as follows: * * * in the programs for the noncategorical handicapped, class size shall not exceed 10." Disputes involving "any matter prohibited by statute or regulation of the Commissioner of Education" are expressly excluded from the contractual grievance and arbitration machinery. Since the limitation upon the superintendent's final authority to fix class size consists solely of the regulations of the Commissioner of Education, and as the contract excludes from arbitration matters prohibited by the commissioner's regulations, it cannot be concluded that the parties agreed to submit the subject dispute to arbitration. As was recently stated by the Court of Appeals in *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.)* (42 NY2d 509, 514), "inasmuch as the responsibilities of the elected representatives of the tax-paying public are overarching and fundamentally nondelegable, it must be taken, in the absence of clear, unequivocal agreement to the contrary, that the board of education did *not* intend to refer differences which might arise to the arbitration forum. Such reference is not to be based on implication" (emphasis in original). Margett, J. P., Rabin, Titone and Mollen, JJ., concur.