■ In the Matter of the Arbitration between THE BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK, Appellant, and RANDOLPH BROWN, Respondent.—Order and judgment (one paper), Supreme Court, New York County, entered May 10, 1977, which denied the petition to vacate an arbitration award and granted the respondent's cross motion to confirm the award is affirmed, without costs or disbursements. The respondent, a lecturer at Brooklyn College, had been for five years under annual appointments since September 1, 1970. Respondent received a favorable recommendation for reappointment by the college and divisional personnel budget committee and an unfavorable recommendation from the college academic review committee. The president of the college refused to reappoint the respondent. The collective bargaining agreement between the Professional Staff Congress/CUNY and the board of higher education provides in section 9.9 that when the president refuses to make a reappointment over a favorable recommendation of the personnel budget committee he is compelled, upon request, to state his reasons. In a terse letter dated January 17, 1975, the president set forth his reasons for not reappointing respondent as "your qualifications are not as outstanding as those of other individuals whose services are available". A grievance was instituted and the decision of the arbitrator sustained the respondent and remanded the matter of reappointment to a select faculty committee pursuant to section 20.5 (subd [c]) of the agreement. That section provides that on failure to reappoint "the

Arbitrator shall not, in any case, direct that a promotion, appointment or reappointment with or without tenure be made, but upon his finding that there is a likelihood that a fair academic judgment may not be made on remand if normal academic procedures are followed, the Arbitrator shall remand the matter * * * to a select faculty committee". The arbitrator then goes on in his opinion to say that "If the 'reasons' requirement in Section 9.9 is to have meaning, Brown was entitled to know where his performance was short of the mark." "To tell a faculty member that there are others better than he, really does not tell him anything much." And finally "when one considers that President Kneller required six weeks (as opposed to the 10 school days permitted) to come up with the rather vague *reason,* against the background of the favorable recommendations of the Committees below, one must conclude that there was an arbitrary application of Board policy on reappointments and the role of personnel and budget committees, the academic review committee and the President of the college in such decisions." We reject the argument that the arbitrator reviewed the president's "academic judgment" in defiance of subdivision (b) of section 20.5 of the agreement. By definition "academic judgment" means the judgment of academic authorities as to procedures, criteria and information. The arbitrator did not review the so-called academic judgment of the president, although he did make it clear that the stated criteria and information upon which this vaunted academic judgment was based appeared to be nonexistent. The arbitrator went on to invoke the provisions of section 20.5 (subd [b], cl [iii]) and determined, "that the claimed academic judgment in respect of the * * * reappointment * * * of a particular individual in fact constituted an arbitrary or discriminatory application of the Bylaws or written policies of the Board." We fail to perceive any injury or prejudice to the petitioner or deviation from the agreement where the arbitrator is clearly given the discretion under subdivision (c) of section 20.5 to refer the matter to a select committee to review the question of "fair academic judgment" especially inasmuch as he himself may not review it per se, and can only find that it was applied arbitrarily. Thus, the arbitrator did not usurp any nondelegable prerogatives of the board and his decision is not contrary to public policy. (Contrast *Matter of Candor Cent. School Dist. [Candor Teachers Assn.],* 42 NY2d 266, 271, and *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774.) Concur—Evans and Markewich, JJ.; Fein J., concurs in a separate memorandum, and Lupiano and Sullivan, JJ., dissent in a memorandum by Sullivan, J.

Fein, J. (concurring). I concur that the order appealed from should be affirmed. The arbitrator did not review the president's "academic judgment" in violation of subdivision (b) of section 20.5 of the agreement which provides: "For purposes of this sub-paragraph, 'academic judgment' shall mean the judgment of academic authorities (including faculty, as defined by the Bylaws, and the Board) (1) as to the procedures, criteria and information. to be used in making determinations as to appointment, reappointment, promotions, and tenure and (2) as to whether to recommend or grant appointment, reappointment, promotions and tenure to a particular individual on the basis of such procedures, criteria and information." The arbitrator made clear that in his view the stated criteria set forth in the president's belated statement of reasons constituted "an arbitrary application of Board policy on reappointments and the role of personnel and budget committees, academic review committee and the President of the College in such decisions." Albeit the arbitrator commented critically on the reasons given by the president for the action, this was only in the context of his

finding, as authorized under the provisions of section 20.5 (subd [b], par [iii]), that the determination "in respect of the appointment, reappointment, promotion or tenure of a particular individual in fact constituted an arbitrary or discriminatory application of the Bylaws or written policies of the Board." Conferring such power on an arbitrator does not violate public policy *(Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist.,* 45 NY2d 898).

Sullivan, J. (dissenting). The judgment should be reversed and the petition to vacate the arbitration award granted. Respondent was a lecturer at Brooklyn College, a unit of city university. After five successive annual appointments, beginning September 1, 1970, he was given timely notice on November 27, 1974, that he would not be reappointed for the 1975-1976 academic year. As a consequence, respondent instituted grievance procedures. Earlier, on September 16, 1974, respondent had been given a favorable recommendation by the college divisional personnel and budget committee (P & B Committee). He had received an unfavorable recommendation from the college academic review committee on September 30, 1974. Under the collective negotiating agreement between the Board of Higher Education in the City of New York and the Professional Staff Congress/CUNY, the refusal of a college president to recommend reappointment after a favorable recommendation by the college P & B Committee permits the affected individual to request the president to furnish a written statement of his reasons: "When a College President determines not to make a recommendation to the Board of Higher Education for reappointment or promotion of a person recommended to him by a College P & B Committee or other appropriate body, the individual affected by that decision shall be notified of the Committee's favorable recommendation and of the President's decision. The notice shall not state the reasons for the President's action. Within 10 school days after receipt of the said notice, the affected individual may submit to the President a request, signed by him, for a statement of the reasons for the President's action. Within 10 school days after receipt of the request, the President shall furnish a written statement of his reasons to the affected employee. *The President shall not be required thereafter to justify his decision or his reasons"* (§ 9.9; emphasis added). In response to respondent's request for the reasons for his nonappointment, the college president wrote to him, in part, as follows: "It was my considered judgment that your qualifications are not as outstanding as those of other individuals whose services are available, and I decided therefore not to recommend your reappointment." At arbitration, respondent raised several issues, only one of which concerns us here, that is, that the reason given by the president for nonreappointment was "preposterous, vague and arbitrary." In that regard, at least, the arbitrator agreed, finding that the reason given by the president constituted an arbitrary application of board policy. The arbitrator remanded the matter to a select faculty committee pursuant to a provision of the collective negotiating agreement "in order that a fair academic judgment be made." The arbitrator stated his reasons as follows: "If the 'reasons' requirement in Section 9.9 is to have meaning, Brown was entitled to know where his performance was short of the mark. The Board and its separate units certainly should be encouraged in the pursuit of academic excellence, in all of its formulations, but, if staff members are to be required to meet some standard of excellence they are entitled, in the first place, to know what that standard is, and, in the second place, to know where they failed if they are not reappointed. To tell a faculty member that there are others better than he really doesn't tell him anything much. The stars in

the academic firmament are just as elusive as some in the very heavens, although most academics would accept the notion that they are out there somewhere, some shining more brightly than others. But their possible existence, without more positive identification hardly tells Brown why he was not reappointed." In *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.)* (42 NY2d 509), the Court of Appeals set out (p 513) a twofold test for determining arbitrability in the public sector: "whether arbitration claims with respect to the particular subject matter are authorized by the terms of the Taylor Law" and, if so, "whether the parties did agree by the terms of their particular arbitration clause to refer their differences in this specific area to arbitration." In that connection, the Court of Appeals recognized (pp 512-513, 514) that there is no presumption of arbitrability in a public sector collective agreement as there is in a private sector agreement and that an agreement to arbitrate is not to be based on implication. With that principle as a guide, I am of the view that the collective negotiating agreement excluded from review the president's reasons for his nonreappointment decision. Section 9.9 of the agreement provides that once reasons are given for a nonreappointment, "The President shall not be required thereafter to justify his decision or his reasons." Such clause hardly constitutes the "clear, unequivocal agreement to the contrary" in the absence of which it will not be concluded that the board intended "to refer differences which might arise to the arbitration forum." *(Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn., supra,* p 514.)* Furthermore, section 20.5 (subd [b], par [2]) of the agreement defined academic judgment as the judgment of academic authorities as to, *inter alia,* "whether to recommend or grant appointment, reappointment, promotions and tenure to a particular individual on the basis of such procedures, criteria and information." It is further provided that "In the arbitration of a grievance of action based in whole or in part upon such academic judgment, the Arbitrator shall not review the merits of the academic judgment or substitute his own judgment therefor". So, in addition to the stricture against requiring the president to justify his decision not to reappoint, the agreement bans a review of academic judgment. In fact, it is evident that specific policy, as envisioned by the board and the professional staff congress, prevented review of an exercise solely within the discretion of the college president. Clarification of the intent of section 9.9 can be gleaned from a report, dated May 17, 1973, by the fact finder board appointed by the New York State Employment Relations Board on the hearing held on the proposed section: "In our judgment, a President should be required to give his reasons for overruling a favorable recommendation by a College P & B Committee. Such action on the part of a President is not proscribed by the Max-Kahn Report. *On the other hand, we do not support the PSC proposal that the President be required to justify his decision."* (Emphasis added.) This distinction, duly noted, eventually became incorporated into section 9.9. There is no justification in section 9.9, or in the arguments advanced before its adoption, for the arbitrator's statement that "If the 'reasons' requirement of Section 9.9 is to have meaning, Brown was entitled to know where his performance was short of the mark." All that the president was required to do was to give respondent a reason for his nonreappointment. Having been given the reasons for the president's decision not to reappoint him, respondent received all the rights to which he was entitled under the agreement. But in any event, I find nothing "preposterous, vague and arbitrary" about the reason given for nonreappointment, i.e., "your qualifications are not as

outstanding as those of other individuals whose services are available." The board's participation in the arbitration does not estop it from challenging the determination, since an arbitrator's award may be upset when the arbitrator has "exceeded his power" (CPLR 7511, subd [b], par [iii]). This has been interpreted by the Court of Appeals to mean that a determination will be vacated "where the document expressly limits or is construed to limit the powers of the arbitrators, hence, narrowing the scope of arbitration" *(Lentine v Fundaro,* 29 NY2d 382, 385, citing *Matter of Granite Worsted Mills [Aaronson Cowen Ltd.],* 25 NY2d 451, 456-457). There can be no argument that the contract specifically prohibits the arbitrator from reviewing academic judgment. Moreover, since respondent had challenged the timeliness of the reason given by the president to recommend reappointment, and timeliness is an arbitrable issue, the board could not have moved to stay arbitration pursuant to CPLR 7503 (subd [b]). But the issue of timeliness should not be confused with the president's right not to have to justify his reasons. Accordingly, I would reverse the judgment appealed from, and grant the petition to vacate the arbitrator's award.