(NOVEMBER 13, 1980)

■ In the Matter of the Arbitration between the CITY OF TROY, Respondent, and TROY POLICE BENEVOLENT AND PROTECTIVE ASSOCIATION, Appellant. (Proceeding No. 1.) In the Matter of PATRICK A. VALENTI, Appellant, v CITY OF TROY et al., Respondents. (Proceeding No. 2.) — Appeal, in Proceeding No. 1, from a judgment of the Supreme Court at Special Term, entered February 20, 1979 in Rensselaer County, which granted petitioner's application to stay arbitration sought by respondent. Proceeding, pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Rensselaer County) to review a determination of the Troy City Manager which found petitioner guilty of disciplinary charges brought against him pursuant to section 75 of the Civil Service Law. Both of these matters arose following legislative hearings conducted by the Troy City Council. A team policing concept was then under consideration which the Troy Police Benevolent and Protective Association (PBA) opposed and it was allowed to present witnesses at the hearing to record its views. Sergeant Patrick Valenti, a 21-year member of the Troy police force and PBA vice-president, attended the hearings at the request of the PBA president in order to testify should an emergency prevent other witnesses from appearing as planned. Although Valenti had gathered information and co-ordinated the PBA's position, he did not actually testify at the hearings. However, following the instructions of the PBA president, he did submit forms requesting overtime pay for the hours spent at the hearings. *
The Commissioner of Public Safety responded with a brief memorandum which ended as follows: "Submit a written request stating the reasons for your submission". Valenti never answered this document, but his original request had specifically identified the hearings as the basis of his claim. On May 9, 1978 the Commissioner of Public Safety, pursuant to section 75 of the Civil Service Law, preferred charges against Valenti alleging (1) that he knowingly falsified an official report when he requested overtime pay in connection with his attendance at the city council hearings, and (2) that he was insubordinate in deliberately failing and refusing to obey a lawful order by not submitting the requested written report. A hearing on those charges resulted in a finding of guilty on each specification and produced a recommendation that he be suspended for one week without pay. The city manager adopted the recommendation and the penalty was imposed. Thereafter Valenti, through the PBA, sought to arbitrate this decision on the ground it violated provisions of the contract between the City of Troy and the PBA. Special Term granted a stay of arbitration upon application of the city, and the PBA appeals in Proceeding No. 1. Proceeding No. 2 was instituted by Valenti under CPLR article 78 for judicial review of the determination (see Civil Service Law, § 76) and it was transferred to this court (CPLR 7804, subd [g]). Both matters are now before us on a joint record. Arbitration was properly stayed in Proceeding No. 1. Although article 9 of the contract between the city and the PBA outlines a step-by-step grievance procedure culminating in arbitration, the article expressly provides that it applies "except when it is inconsistent with the Troy City Charter," and section 7.04 of the charter recites that "All removal and other disciplinary action of the police force and of the fire force of the city shall be controlled by Article 5 of the New York State Civil Service Law, Sections 75 through 77, including any amendments thereto." Moreover, article 8 of the collective bargaining agree-

---

* At the subsequent disciplinary hearing, the Mayor testified it was his understanding that, pursuant to the collective bargaining contract, those who "testified" for the PBA would be remunerated appropriately. The president of the PBA related his understanding with the Mayor was to the effect that those who "participated" in the hearing would be compensated.

ment contains the following language: "B. Unless the affected police officer should otherwise agree, with prior notice to the Association, all disciplinary proceedings shall be controlled by Article 5 of the Civil Service Law of the State of New York, as provided for in Section 7.04 of the City Charter and by Article IX, infra." The PBA's position that the contract reflects an agreement to permit arbitration of disciplinary proceedings is unsupportable. The reference to article 9 in the provisions of article 8 of the contract might imply that some alternative method of procedure exists outside the framework of the Civil Service Law, but it by no means represents an "express, direct and unequivocal" agreement as to which disciplinary matters will be subject to a grievance and arbitration procedure *(Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.], 42 NY2d 509, 511; Matter of Board of Education [Educational Secretaries of Kingston Area], 62 AD2d 827).* We now address the issue raised in Proceeding No. 2; whether there is substantial evidence to support the determiniation of the city manager. First, we find no indication that Sergeant Valenti "knowingly falsified an official report alleging to have worked overtime on two evenings in connection with City Council hearings." In submitting his claim Valenti was obviously following advice given by the PBA president and simply adhered to a past routine. The discussions and evident differences of opinion between the Mayor and the PBA president did not directly involve him. Clearly, there was no showing of any *scienter* or bad faith on his part when he completed the overtime request. While presenting a somewhat closer question, we do not believe this record presents the quality and quantity of proof sufficient to uphold the second conclusion that Valenti "deliberately refused and failed to obey the lawful *order* to submit the required report" (emphasis added). The record only demonstrates that he did not comply with the terms of a *memorandum* which sought such a report. The distinction is, of course, crucial. The communicaton in quesion was labeled a "memorandum" by the commissioner at the hearing and, as noted, Valenti's request had stated the reason for his claim. Considering the past procedures of an administrative housekeeping nature in the City of Troy Police Department and the absence of a definite and clear meaning of the word "order" in this semimilitary organization, we cannot say the evidence produced here is sufficiently substantial to support the determination. The only reasonable inference to be drawn was, as urged by the petitioner, that the memorandum containing the request was merely intended as the forerunner of an expected grievance, and not as the predicate for a disciplinary proceeding (see *300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176; *Matter of Stork Rest. v Boland,* 282 NY 256). In Proceeding No. 1, judgment affirmed, with costs. In Proceeding No. 2, determination annulled, and petition granted, with costs. Mahoney, P. J., Greenblott, Sweeney, Kane and Herlihy, JJ., concur.