99 N.Y.2d 273 (2002)
784 N.E.2d 1158
755 N.Y.S.2d 49
In the Matter of the Arbitration between CITY OF JOHNSTOWN, Appellant, and JOHNSTOWN POLICE BENEVOLENT ASSOCIATION, Respondent.
In the Matter of the Arbitration between CITY OF SCHENECTADY, Appellant, and SCHENECTADY POLICE BENEVOLENT ASSOCIATION, Respondent.
Court of Appeals of the State of New York.
Argued November 12, 2002.
Decided December 17, 2002.
*274 Roemer Wallens & Mineaux LLP, Albany (Elayne G. Gold and Robert E. Smith of counsel), for appellants in the first and second above-entitled proceedings.
*275 Grasso & Grasso, Schenectady (Jane K. Finin and Michelle M. Scuderi of counsel), for respondents in the first and second above-entitled proceedings.
Chief Judge KAYE and Judges SMITH, LEVINE, CIPARICK and WESLEY concur with Judge ROSENBLATT; Judge GRAFFEO dissents and votes to reverse in a separate opinion.

*276 OPINION OF THE COURT
ROSENBLATT, J.
In these appeals, Police Benevolent Associations (PBAs) in the Cities of Johnstown and Schenectady sought arbitration of grievances concerning the calculation of certain employees' retirement benefits pursuant to the formula contained in Retirement and Social Security Law § 302 (9) (d). Both cases present the same question: whether the grievances are arbitrable. We conclude that they are, and therefore affirm the Appellate Division orders dismissing the Cities' petitions to stay the arbitrations.

I.
In December 1998 and April 1999, the PBAs and the Cities of Johnstown and Schenectady, respectively, signed the collective bargaining agreements (CBAs) at issue. The agreements contain the terms and conditions of employment for police officers, and were negotiated and signed by the municipalities and the PBAs. Under each CBA, retirement benefits were to be computed using the definition of "Final Average Salary" in Retirement and Social Security Law § 302 (9) (d).[1] When the parties signed the CBAs, the statute provided that retirement benefits for Tier I police and fire employees could be based on an employee's average monthly salary for the 12 months immediately preceding retirement. Tier I employees were statutorily defined as "employees of a participating employer who were such employees on or before June thirtieth, nineteen *277 hundred seventy-three" (former Retirement and Social Security Law § 302 [9] [d]).
In November 1999, the Legislature amended Retirement and Social Security Law § 302 (9) (d). Under the amended statute, the Legislature extended the 12-month calculation formula to non-Tier I employees (see L 1999, ch 638, § 1). There was (and remains) no obligation on the part of employers, however, to provide this benefit. Instead, Retirement and Social Security Law § 443 (f-1) states that employee demands for the section 302 (9) (d) retirement benefits formula shall not be subject to compulsory interest arbitration (see Retirement and Social Security Law § 443 [f-1] [citing Civil Service Law § 209 (4) (b)-(c)]).
After the amendment to section 302 (9) (d), the PBAs argued to the Cities that the CBAs' reference to section 302 (9) (d) made all members of the bargaining unit, specifically Tier II employees, eligible for those benefits. When the Cities declined to provide the section 302 (9) (d) benefits to Tier II employees, the PBAs issued a demand for arbitration, relying on the broad arbitration clauses of the CBAs.[2]
The Cities then filed CPLR article 75 petitions to stay the arbitrations, and Supreme Court, in each case, granted the stay. In Johnstown, the court reasoned that the City and the PBA did not intend to provide the retirement benefits to Tier II employees, given that when the agreements were signed, the City was not legally permitted to provide benefits to anyone other than Tier I employees. In Schenectady, the court held that Retirement and Social Security Law § 443 (f-1) prohibited arbitration of disputes concerning the allocation of these retirement benefits to Tier II employees.
In both cases, the Appellate Division reversed and dismissed the petitions. Finding a "reasonable relationship" between the subject matter of the CBAs and the PBAs' grievances, the Court found the matters arbitrable (see Matter of City of Johnstown [Johnstown Police Benevolent Assn.], 289 AD2d 832, 833 [2001]; Matter of City of Schenectady [Schenectady Police Benevolent Assn.], 289 AD2d 814, 815-816 [2001]). We affirm.

*278 II.
A grievance may be submitted to arbitration only where the parties agree to arbitrate that kind of dispute, and where it is lawful for them to do so. In determining whether a grievance is arbitrable, we therefore follow the two-part test enunciated in Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.) (42 NY2d 509 [1977] [Liverpool]) and Matter of Board of Educ. of Watertown City School Dist. (Watertown Educ. Assn.) (93 NY2d 132, 143 [1999] [Watertown]). We first ask whether there is any statutory, constitutional or public policy prohibition against arbitration of the grievance (see Liverpool, 42 NY2d at 513). This is the "may-they-arbitrate" prong. If there is no prohibition against arbitrating, we then examine the CBA to determine if the parties have agreed to arbitrate the dispute at issue (see Watertown, 93 NY2d at 140; Liverpool, 42 NY2d at 513-514). This is the "did-they-agree-to-arbitrate" prong.

A.
The Cities contend that this case fails both prongs. As to the "may-they-arbitrate" prong, they, and the dissent, assert that when the parties signed the CBAs it would have been illegal to provide the retirement benefits of Retirement and Social Security Law § 302 (9) (d) to Tier II employees. Their argument misses the point. The relevant inquiry is not whether the benefits may be lawfully provided,[3] but whether law or public policy bars arbitration of the grievances.
As to that, the Cities cite Retirement and Social Security Law § 443 (f-1). That statute, however, does not control whether the grievance is arbitrable. True, pursuant to section 443 (f-1), the allocation of section 302 (9) (d) benefits is exclusively within the prerogative of the employer, and Tier II employees may not seek redress through interest arbitration when their employers refuse to give them that benefit during collective bargaining. The PBAs here, however, are not arguing that their Tier II members should be given the retirement *279 benefits. Instead, they are arguing, in essence, that the pre-existing CBA already gave them the benefits. In sum, the dispute at the heart of this case is not the negotiation of a provision of a CBA (which, pursuant to section 443 [f-1], may not go to arbitration), but the interpretation of a CBA provision (which section 443 [f-1] does not address). We conclude that there is no statutory, constitutional or public policy bar preventing the parties from agreeing that an arbitrator will decide whether they intended in these clauses to extend benefits to Tier II employees if and when it became lawful for municipalities to do so.

B.
In arguing that the case fails Liverpool-Watertown prong two, the Cities assert that the parties did not intend, and the CBAs do not evince any intent, to arbitrate this dispute. According to the Cities, they could not have intended to arbitrate whether Tier II employees were entitled to these retirement benefits because, under the law existing at the signing of the CBAs, Tier II employees were precluded from receiving those benefits. Again, however, by raising the merits of the grievance, the Cities frame the issue improperly. The appropriate inquiry is whether the parties agreed to have arbitrators decide the proper interpretation of the CBAs' retirement benefits provisions.
We have steadfastly maintained a distinction between the merits of grievances and the threshold question of whether courts or arbitrators have the authority to decide the merits. In Watertown we stressed the importance of keeping the inquiries separate. "Even an apparent weakness of the claimed grievance is not a factor in the court's threshold determination. It is the arbitrator who weighs the merits of the claim" (Watertown, 93 NY2d at 142). CPLR 7501 also directs that, when deciding whether a dispute is arbitrable, "the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute."
Our task, as we stated in Watertown and as the Appellate Division correctly held, is merely to "determine whether there is a reasonable relationship between the subject matter of the dispute and the general subject matter of the CBA" (Watertown, 93 NY2d at 143). The CBAs provide that the PBAs may request arbitration for unresolved grievances. There is no exception in the CBAs for grievances concerning retirement *280 benefits, either generally or for Tier II employees. Therefore, we conclude that the reasonable relationship test is readily met, and this dispute is arbitrable.
Accordingly, in each proceeding, the order of the Appellate Division should be affirmed, with costs.
GRAFFEO, J. (dissenting).
Because I disagree with the majority's conclusion that the grievances at issue in these CPLR article 75 proceedings should proceed to arbitration, I respectfully dissent. The facts underlying these proceedings are set forth in the majority opinion and I concur with the majority's articulation of the two-step analytical framework for determining whether a grievance is arbitrable (see, Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.], 42 NY2d 509 [1977]; Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.], 93 NY2d 132 [1999]). The disputes arise from the failure of the Cities of Johnstown and Schenectady to extend to Tier II members of their fire and police departments a 12-month final average salary benefit option used for the calculation of retirement benefits. The majority claims that the Cities' argument that it would have been illegal for the parties involved to have provided for the extension of these retirement benefits to Tier II employees "misses the point" (majority op at 278)but that is precisely the point that should lead to a stay of arbitration in these cases.
In my view, these disputes fail the first prong of the Liverpool/Watertown testreferred to as the "may-they-arbitrate" test because the statutory condition precedent that must be met before the parties can engage in collective bargaining regarding this type of retirement benefit did not occur. At the time the Cities entered into the respective collective bargaining agreements with the fire and police unions, the "final average salary" component of retirement benefit computation was addressed in then-section 302 (9) (d) of the Retirement and Social Security Law. That statute authorized a municipality, as the employer, to elect to use an employee's "regular compensation earned from such participating employer by a member during the twelve months of actual service immediately preceding the date of such employee's retirement" in calculating the employee's final average salary, provided the employee had been employed by the municipality "on or before June thirtieth, nineteen hundred seventy-three" (former Retirement and Social Security Law § 302 [9] [d])a reference that limited the *281 option's availability to Tier I members of the retirement system. This was an enhanced pension benefit because a member's final average salary would otherwise have been based on the employee's "highest average annual compensation earned during any three consecutive years of member service" (Retirement and Social Security Law § 302 [9] [b]). It is important to note that both Cities elected to exercise the option for Tier I employees by adopting and filing legislative resolutions with the State Comptroller that authorized these members of their fire and police departments to be eligible for the more generous 12-month final average salary computation.
After the parties executed the collective bargaining agreements under which the unions brought the grievances at issue, the State Legislature amended article 11 of the Retirement and Social Security Law, which defines the benefits available to Tier II members of public retirement systems. Among the changes, new subdivisions were added to section 443 that authorized an employer to elect to extend the enhanced 12-month final average salary benefit to Tier II members but expressly prohibited compulsory interest arbitration demands for such a benefit (see L 1999, ch 638, § 2; L 2000, ch 109, § 1; Retirement and Social Security Law § 443 [f], [f-1]).[*]
In the same legislation, Retirement and Social Security Law § 302 (9) (d) was amended to delete the provision that had previously limited the local option to provide 12-month final average salary eligibility to Tier I members (see L 1999, ch 638, § 1). As a result, in 2000 both Cities were served with policy grievances claiming that their failure to extend the newly-created 12-month final average salary benefit option to *282 Tier II members of the fire and police departments violated the collective bargaining agreements then in effect.
In their CPLR article 75 petitions to stay arbitration, the Cities argued that since the agreements were entered into before the 1999 enactment of the statutory amendments, the grievances were not arbitrable. I believe this contention raises the threshold issue of whether it is legal to submit such disputes to arbitration under the Taylor Law (the first prong of the Liverpool/Watertown test), which inquiry must be answered before considering whether the parties in fact agreed to arbitrate the benefit (the second prong of the test).
Civil Service Law § 201 (4), a provision of the Taylor Law, expressly differentiates between retirement matters and all other issues subject to collective bargaining by excluding retirement benefits from the definition of terms and conditions of employment subject to collective bargaining. It states:
"`terms and conditions of employment' means salaries, wages, hours and other terms and conditions of employment provided, however, that such term shall not include any benefits provided by or to be provided by a public retirement system, or payments to a fund or insurer to provide an income for retirees, or payment to retirees or their beneficiaries. No such retirement benefits shall be negotiated pursuant to this article, and any benefits so negotiated shall be void" (Civil Service Law § 201 [4] [emphasis added]).
Under this statutory mandate, it could not be clearer that pension benefits are different from other terms and conditions of employment which may be negotiated in a collective bargaining agreement. Unlike other benefits, public employers are prohibited from negotiating and granting retirement benefits in a collective bargaining agreement that are not expressly provided under state law. The unique needs of administering a statewide retirement system require such restrictions to avoid unduly burdening the state retirement systems by forcing them to simultaneously apply a hodgepodge of varying benefits offered by different municipalities and other public employers to different groups of employees. The fact that the grievance at issue here involves retirement benefits distinguishes it from Watertown (which concerned health insurance benefits), Liverpool (which concerned procedures applicable to a teacher returning from sick leave) and our other grievance arbitration *283 cases (see e.g., Matter of Committee of Interns & Residents [Dinkins], 86 NY2d 478 [1995] [employer's obligation to provide legal defense and indemnification]).
Indeed, the Legislature explicitly stated that the benefit at the heart of this disputethe extension of the 12-month final average salary benefit for Tier II employeeswas not a proper subject of interest arbitration (L 1999, ch 638; Retirement and Social Security Law § 443 [f-1]). This prohibition was intended to preclude employee bargaining representatives from obtaining this benefit unless the local legislative bodies authorize the Cities to offer it.
Because retirement benefits are not a term or condition of employment under the Taylor Law and it would have been illegal for the Cities to have negotiated or agreed to extend this Retirement and Social Security Law § 302 (9) (d) benefit to Tier II employees at the time the collective bargaining agreements at issue were executed, the specific prohibition on interest arbitration found in the 1999 legislation should also bar grievance arbitration of this dispute. This is so because grievances, by definition, arise from benefits agreed to in a collective bargaining agreement. Permitting grievance arbitration of a benefit the Cities could not have lawfully agreed to provide in the collective bargaining agreement circumvents the fundamental purpose of grievance arbitrationto enforce the terms and conditions of the parties' collective bargaining agreementand allows the unions to use this procedure to obtain a benefit they could not have negotiated.
Furthermore, I believe the parties would have also been precluded from agreeing to confer a right of eligibility to employees at some future time in the event such a benefit option were later created by law. Any such action on the part of the Cities would directly violate the Taylor Law's prohibition on negotiating or granting retirement rights not authorized by law (see Civil Service Law § 201 [4]) and would improperly preempt the power of the local legislative bodies to authorize the extension of such benefitspower which the Legislature chose to place exclusively in their hands when it passed the 1999 legislation.
The majority's focus on the second prong inquiry, that is the "reasonable relationship between the subject matter of the dispute and the general subject matter of the CBA" (Watertown, 93 NY2d at 143), ignores the right of a municipality to first determine if it is able to bear the cost of extending the *284 12-month final average salary benefit to additional employees and to budget for that additional expense. In this case, the legislative bodies of these municipalities did not opt to extend the benefit to Tier II members under the collective bargaining agreements in effect at the time these grievances were filed. Indeed, to date, those legislative bodies have apparently not elected to extend the benefit.
I also disagree with the majority's characterization of this analysis as a matter of interpretation of the parties' collective bargaining agreements or a merits inquiry. Its holding "that an arbitrator will decide whether they intended * * * to extend benefits to Tier II employees if and when it became lawful for municipalities to do so" (majority op at 279) contravenes the local option provision of the statute, thereby violating state law. Because there is no legal authority for an arbitrator to extend such retirement benefits in the absence of municipal authorization, I would reverse the orders of the Appellate Division and stay arbitration.
In each case: Order affirmed, with costs.
NOTES
[1] The Johnstown CBA states that retirement benefits should be calculated "pursuant to Section 384 subdivision d of the New York Retirement and Social Security Law. (final 12 month average salary plan)." That section, however, does not prescribe a method of calculating retirement benefits. The City of Johnstown agrees with the PBA that the CBA should be interpreted to refer to section 302 (9) (d). The City notes that section 302 (9) (d) benefits were automatically conferred to Tier I police officers when the benefits were given to Tier I firefighters in a separate CBA (see Brief of City of Johnstown at 3 n 1).
[2] The Johnstown agreement states that "[i]n the case of unresolved grievances, the [PBA] may request arbitration in accordance with the rules of the Public Employment Relations Board relating to arbitration." The Schenectady agreement states that "[a]ny unresolved grievance having been processed fully through the last step of the grievance procedure may be submitted to arbitration by either party * * *." Both agreements define "grievance" to include disputes over the interpretation or application of the CBAs.
[3] Even here, however, the Cities' argument is dubious. The Cities conceded at oral argument, correctly, that there would be no statutory, constitutional or public policy prohibition against awarding benefits to Tier II employees if the CBAs had explicitly said that they would incorporate any future changes made to Retirement and Social Security Law § 302 (9) (d). Accordingly, after the 1999 amendment to Retirement and Social Security Law § 302 (9) (d), there is no prohibition against calculating Tier II retirement benefits by using the 12-month average salary formula.
[*] The legislation provided:

"f. Notwithstanding the provisions of subdivisions a, b and c of this section, a participating employer may elect, pursuant to the provisions of paragraph d of subdivision nine of section three hundred two of this chapter, to have the provisions of such paragraph apply to the police officers and firefighters in its employ who are subject to the provisions of this article.
"f-1. A demand in collective negotiations for the additional pension benefit provided by subdivision f of this section shall not be subject to the provisions of paragraph (b) or (c) of subdivision four of section two hundred nine of the civil service law, nor shall such demand be subject to any provision for interest arbitration contained in any local law, resolution or ordinance adopted by any governmental entity pursuant to subdivision one of section two hundred twelve of the civil service law" (emphasis added).