OPINION OF THE COURT
Kaye, J.
This appeal centers on the determination of the Board of Collective Bargaining of the City of New York (the Board) that New York City committed an improper public employer practice in unilaterally ordering that, as a condition of appointment or promotion, candidates disclose and pay debts owed the City. We conclude that, in overturning the Board’s *124 determination, Supreme Court and the Appellate Division failed to accord proper deference to the decision of that neutral administrative body, and therefore modify the order before us.
I
In February 1986, New York City Mayor Edward I. Koch sent a memorandum to City employees urging them voluntarily to disclose and pay any debts they owed the City. He wrote that the City was already vigorously pursuing its private sector debtors and would shortly implement measures to collect debts from City employees, in order to better enable the City to deliver needed services to all New Yorkers; no person would be hired without disclosure of indebtedness and agreement to pay it. The Koch memorandum began and ended on the same note: "every dollar we cannot collect is a dollar we cannot use to pay for cleaner streets, better schools, more police and fire protection — and better employee benefits.”
Two months later, the policy was instituted, without prior negotiation with municipal employee unions, in a Personnel Policy and Procedure Bulletin promulgated by the City Personnel Director. That document, captioned "Debt Collection From City Employees of Debts Owed to the City through Payroll Deduction,” began with the words, "[i]n order to collect debts owed to the City.” As explained therein, all applicants for employment or promotion would be required to complete a two-part form. The first part was a questionnaire seeking 10 years of home addresses as well as information regarding motor vehicle registrations; unpaid parking violations or other fines, penalties or judgments in favor of the City; public assistance overpayments; and whether State and City income tax returns had been filed for the previous five years. Second, the form contained the following repayment agreement:
"As a qualification for appointment and continued employment with the City, I agree to repay any amounts which I owe to the City or any agency or department thereof, either by lump sum payment or, if I am able to demonstrate hardship, by deductions from my paycheck not to exceed 10% of the net income indicated on my paycheck. I further agree to cooperate with officials of the City or any agency or department thereof in determining the amounts which I may owe to the City. Failure to *125 repay any amounts which I owe the City or any agency or department thereof may be grounds for disciplinary action.”
Any applicant who refused to complete the form and sign the repayment agreement was to be denied employment or promotion.
Three municipal employee unions filed separate improper practice petitions with the Board challenging the policy. The unions argued that the repayment agreement, which provided for payroll deductions and the possibility of discipline, affected wages or terms and conditions of employment and thus could not be implemented without prior good-faith bargaining. The unions further claimed that the questionnaire portion of the form was so personally invasive that it also affected a term or condition of employment.
While conceding that "the purpose of the new procedure [was] to both ensure that the City recovers the monies owed to it and that the recovery is accomplished in an expeditious manner,” the City in its response to the petitions added the affirmative defense that, as an employment qualification relating to character and reputation, the policy was a managerial prerogative not subject to mandatory bargaining. The City further claimed that, in any event, the policy did not affect wages because an employee could choose to pay the debt in a lump sum, and the information sought was largely a matter of public record and not an unwarranted invasion of privacy.
In its decision on the consolidated petitions, the Board recognized that character and reputation could be an appropriate qualification for employment or promotion. In this instance, however, the Board concluded from the combined substance and history of this policy that it was neither intended nor used as such by the City but was purely an economic measure. First viewing the substance of the policy, the Board observed that no matter how much was owed or how long the debt was delinquent, no candidate was disqualified from City employment or promotion on character grounds so long as the debt was paid; conversely, every applicant who refused to pay, however recent or nominal the debt, was automatically disqualified. Turning to the history of the policy, the Board took into account that neither the Koch memorandum nor the policy itself mentioned character or reputation, and the City conceded that its purpose was to raise money expeditiously.
*126 Having rejected the City’s contention that this policy was a test of character and reputation, the Board proceeded to consider whether the policy affected any mandatory subjects of bargaining, concluding that the payroll deductions and threat of disciplinary action contained in the repayment agreement were both bargainable. As for the questionnaire, the Board recognized only a "minimal” expectation of privacy in the information requested, and allowed the City to ask the questions of new hires.[1] With respect to candidates for promotion, however, the Board deemed these same questions an "intrusion into employee privacy affecting a term or condition of employment.” The Board consequently prohibited the City from making the inquiries of promotion candidates and enjoined use of the repayment agreement.
The City sought review in a CPLR article 78 proceeding, and Supreme Court, finding the Board’s decision unreasonable, arbitrary and legally impermissible, annulled it in its entirety. The Appellate Division affirmed, and we granted the Board leave to appeal. We now modify the Appellate Division order to reinstate the Board’s determination with respect to the repayment agreement and otherwise affirm.
II
Recognizing the benefits of decentralized administration of public sector labor relations (see, McHugh, New York's Experiment in Public Employee Relations: The Public Employees’ Fair Employment Act, 32 Albany L Rev 58, 82 [1967]), the Public Employees’ Fair Employment Act (the Taylor Law) permits local government bodies — including New York City— to enact substantive and procedural provisions governing labor relations, so long as they are "substantially equivalent” to the Taylor Law (Civil Service Law § 212 [1], [2]).
Consistent with the Taylor Law, the New York City Collective Bargaining Law (Administrative Code of City of New York § 12-301 et seq.) imposes a duty on public employers and certified employee organizations to bargain in good faith on wages, hours and working conditions (Administrative Code § 12-307 [a]). An employer commits an improper practice if it alters, without prior good-faith negotiation, a term or condition of employment (see, Administrative Code § 12-306 [a] [4]; *127 Matter of State of New York [Department of Transp.] v Public Employment Relations Bd., 174 AD2d 905; Matter of State of New York, Governor's Off. of Employee Relations v Public Employment Relations Bd., 116 AD2d 827). Specifically excluded from the scope of collective bargaining, however, are certain fundamental managerial decisions — management prerogatives — such as the methods by which an operation will be performed (see, Administrative Code § 12-307 [b]). Although these decisions are excluded from bargaining, their practical impact on employees may be bargainable (Administrative Code § 12-307 [b]; Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 51-52). In the exercise of managerial prerogatives, moreover, the employer must act in good faith (see, Matter of Lezette v Board of Educ., 35 NY2d 272, 278).
Although terms and conditions of employment (subject to bargaining) and management prerogatives (exempt from bargaining) may be neatly separated in principle, the practical task of assigning a particular matter to one category or the other is often far more difficult. Indeed, in many instances a matter may partake of both categories, requiring a balancing of the interests involved (see, 140 Misc 2d 727, 732). No litmus test has yet been devised that automatically identifies a term or condition of employment, or a management prerogative, or establishes whether a particular subject should be placed into the first category or the second (see, Matter of Association of Cent. Off. Adm’rs [Board of Educ.], 4 PERB |f 4509, at 4599).
Just such a difficulty arises in the present case. The City urges that promulgation of character standards is the exclusive, nondelegable statutory duty of the City Personnel Director, outside the scope of collective bargaining, and that the Board must defer to her designation; the only limitation on this authority is reasonableness. The Board, by contrast, claims that a dispute as to whether a particular matter falls within terms and conditions of employment and is thus a mandatory subject of negotiation, must be resolved in the first instance by the labor relations agency with jurisdiction over the employees involved, not by the City Personnel Director. For the reasons that follow, we agree with the Board.
The Board is a neutral adjudicative agency with powers at the local level akin to those of the Public Employment Relations Board at the State level. It is authorized by the Collective Bargaining Law to prevent and remedy improper practices as they are defined in the statute (Administrative Code *128 § 12-309 [a] [4]). The Board consists of two members appointed by the Mayor, two designated by a committee of unions, and three elected by unanimous vote of the other four (NY City Charter § 1171). By constituency, therefore, the Board is the impartial body before which both public employers and public employee organizations may be advocates.
This regulatory scheme envisions that in the first instance the threshold issue whether a particular subject matter is bargainable should be decided by the impartial body with expertise in the area (see, Matter of Rensselaer City School Dist. v Newman, 87 AD2d 718; Matter of Saratoga Springs City School Dist. [New York State Pub. Employment Relations Bd.], 68 AD2d 202, 208, Iv denied 47 NY2d 711), rather than by the public employer, who could by declaring conditions of employment to be "qualifications” unilaterally put such matters beyond the statutory duty to bargain. Once the Board decides that the employer is exercising in good faith a managerial prerogative that does not affect terms and conditions of employment, then the Board’s inquiry ends and the employer is entitled to broad deference in implementing its action (Administrative Code § 12-307 [b]; see, 1971-1972 Report of Joint Legis Comm on Taylor Law, 1972 NY Legis Doc No. 25, at 34; Note, The Taylor Law, the OCB and the Public Employee, 35 Brooklyn L Rev 214, 227 [1969]). Here the Board determined that the City was not in fact exercising in good faith the managerial prerogative of setting employment qualifications, but was in reality engaged in revenue-raising. That determination should not be upset unless "arbitrary and capricious or an abuse of discretion” (CPLR 7803 [3]; see also, Matter of Incorporated Vil. of Lynbrook v New York State Pub. Employment Relations Bd., 48 NY2d 398, 404; Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d, at 50-51, supra).
The Board began its analysis by acknowledging that character and reputation, measured by some objective standard, can indeed constitute an employment qualification, which includes an appropriately framed policy regarding the disclosure and repayment of City indebtedness.[2] The Board then set forth the grounds for its conclusion that this particu *129 lar policy — in essence, “your checkbook is your character”— sought not to raise morality but simply to raise money. Those reasons explicating and supporting the Board’s conclusion were drawn from record evidence of the operation of this particular policy, considered in combination with its origins, including the City’s acknowledged economic purpose in taking this action. On this record, we cannot say that the Board’s determination was arbitrary, capricious or legally impermissible.
Nor is the City’s contention, that an employee’s current refusal to pay a debt alone establishes a lack of necessary integrity for public service, a proper basis for overturning the Board’s conclusion about this policy. First, the City’s theory— however logical or prudent it may be — overlooks the Board’s determination that any relationship between this policy and employee integrity was pretextual, an afterthought traceable to the unions’ legal challenge. The City’s theory, moreover, carves out a per se exception to bargaining that we have not previously endorsed. As we made clear in Matter of Board of Educ. v New York State Pub. Employment Relations Bd. (75 NY2d 660, 667-668), the obligation to bargain is a strong and sweeping policy of the State, not lightly overridden. We find no basis in the law for now holding that a policy mandating the disclosure and repayment of public debt must in every instance be considered a matter of employee integrity so as to foreclose negotiation.[3]
Ill
Having determined that the policy at issue was not a managerial prerogative excluded from collective bargaining, the Board next considered whether the policy affected terms and conditions of employment, and concluded that it did. That conclusion, similarly, is entitled to deference by the courts. As we have written in a related context, " '[s]o long as PERB’s interpretation is legally permissible and so long as there is no breach of constitutional rights and protections, the courts *130 have no power to substitute another interpretation’ ” (Matter of Board of Educ. v New York State Pub. Employment Relations Bd., 75 NY2d 660, 666, supra, quoting Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 50, supra).
As did the Board, we separately consider the repayment agreement and the questionnaire.
The Repayment Agreement
The repayment agreement provides that if an employee demonstrates hardship, payroll deductions may be made, up to 10% of net pay. The Board held that payroll deductions affect wages and were therefore a matter within the scope of collective bargaining.
We cannot say this was an impermissible conclusion. Indeed, this Court recognized only last month, as a constitutional matter, that a 10% payroll deduction can have a substantial impact on an employee already confronted with expenses for the necessities of life (Association of Surrogates & Supreme Ct. Reporters v State of New York, 79 NY2d 39, 46-47;[4] see also, National Educ. Association — Kansas City v Unified School Dist. No. 500, Wyandotte County, 227 Kan 541, 608 P2d 415, 418 [payroll deductions are a mandatory subject of bargaining]). Although the City policy provides for lump-sum payment as an alternative to payroll deductions, the Board found that this option was, depending on an individual’s finances, largely illusory; indeed, the policy is captioned "Debt Collection From City Employees of Debts Owed to the City through Payroll Deduction” (emphasis added). Again, the Board’s finding was rational and should not have been set aside.[5]
That "payroll deductions” is not expressly listed in the Collective Bargaining Law as a subject within the scope of bargaining is irrelevant, contrary to the dissent’s suggestion (dissenting opn, at 136, n 4). The statutory delineation of the topics of bargaining is intentionally broad, to be explicated by *131 the Board on a case-by-case basis, because "it is impossible to provide [in a statute] a detailed listing of all issues which are negotiable.” (1971-1972 Report of Joint Legis Comm on Taylor Law, 1972 NY Legis Doc No. 25, at 33.)
Moreover, that the City purportedly "could” have insisted on lump-sum payment (dissenting opn, at 136) does not transform this bargainable term and condition of employment into one that is not. We are not concerned with what the City could have done, but must examine what it did. The Board concluded that the presence of a payroll deduction term in the repayment agreement should have been bargained. That finding has a rational basis and we are constrained to uphold it.[6]
The Questionnaire
We reach a different conclusion, however, as to the Board’s holding that the questionnaire so intruded on the personal privacy of promotion candidates that it constituted a unilateral change in the terms and conditions of their employment.
In a recent case challenging a public employer’s disclosure requirement, we upheld as rational PERB’s finding, after a weighing of the competing interests, that a questionnaire was so intrusive that bargaining was required (Matter of Board of Educ. v New York State Pub. Employment Relations Bd., 75 NY2d, at 670-671, supra). There, however, the intrusiveness was manifest: the questionnaire ran 18 pages — six of which sought financial data — and it covered 13 categories of information, including health and political party affiliations (see, id., at 664-665; Matter of Board of Educ. [United Fedn. of Teachers, Local 2], 19 PERB [f 3015).
Here, by contrast, and as the Board acknowledged, virtually all of the information sought — if not already in the City’s possession — is a matter of public record. The Board itself characterized the expectation of privacy in such information as "minimal,” and concluded that such questions were *132 permissible of new hires. No rational balancing of the competing interests — the City’s substantial interest in collecting outstanding debt against an employee’s right to privacy — could result in a conclusion that this questionnaire alters a term or condition of employment.
Accordingly, the order of the Appellate Division should be modified, without costs, to reinstate the Board’s determination with respect to the repayment agreement, and otherwise affirmed.

. The Board alternatively held that as to new hires, the questionnaire was a preemployment action not covered by the Collective Bargaining Law. This aspect of the Board’s determination is not challenged.

. In this litigation, the parties accept the Board’s definition of an employment qualification, even one relating to character and reputation, as a "level of achievement or a special status deemed necessary for optimum on-the-job performance.” We therefore have no occasion to examine this standard.

. Contrary to the dissent, the issue is not whether the policy, in retrospect, "serves as a legitimate measure of character and reputation” (dissenting opn, at 134-135, emphasis added). We need only examine whether there is a rational basis supporting the Board’s conclusion that at the time the City adopted the policy, it was not exercising in good faith a managerial prerogative to set character qualifications but was instead engaged in revenue-raising. We conclude that there was an adequate basis for that finding.

. The dissent elaborately distinguishes Surrogates (dissenting opn, at 136), which of course was decided in a different context. The significance of Surrogates here is simply the Court’s recognition of the potential impact of a 10% salary deduction on employees.

. We further note that as to employees represented by the Uniformed Firefighters Association, one of the petitioners before the Board, the City’s duty to bargain extended to "all matters” (Administrative Code § 12-307 [a] [4]), not just wages, hours and working conditions.

. Having concluded that the payroll deduction aspect of repayment agreement violated the Collective Bargaining Law, we do not decide whether the agreement additionally violated the Collective Bargaining Law on the ground that the form established nonpayment as a basis for discipline. Whether the City is correct that the Collective Bargaining Law grants it a managerial prerogative to discipline (Administrative Code § 12-307 [b]), or the Board is correct in its assertion that the subject is mandatorily bargainable under an isolated clause in Binghamton Civ. Serv. Forum v City of Binghamton (44 NY2d 23, 28), is not necessary to the resolution of the dispute before us and therefore must be left for future resolution.