OPINION OF THE COURT
Bellacosa, J.
The New York City Board of Collective Bargaining determined that an alleged employee disciplinary grievance was subject to arbitration. The lower courts upheld the Board’s determination and concluded that it did not impinge on public policy. The New York City Department of Sanitation appeals to this Court by our grant of leave to appeal. The issue presented is whether the Board’s determination of arbitrability offends public policy and whether it is otherwise sustainable.
Richard Diamond was employed by the Sanitation Department as a project manager of a facility in Maspeth, Queens. His civil service title is Civil Engineer, and he is a member of District Council 37, Local 375, AFSCME. In November 1991, Diamond wrote a letter to the Director of Construction complaining about certain personnel assignments and work procedures, which he claimed were being implemented without his approval or consultation. The grievance alleges that the Director responded by calling Diamond an "incompetent” and told him that he would soon be transferred to the Department’s facility at the Fresh Kills Landfill on Staten Island (approximately 20 miles from the Maspeth facility). On or about November 19, 1991, Diamond was transferred from Maspeth to Fresh Kills and, subsequently, on November 21, Diamond met with his immediate supervisor and the Director to discuss the transfer. During this conversation, the Director is claimed to have again stated that Diamond was transferred because he was an "incompetent.”
Respondent District Council 37 filed a grievance on behalf of Diamond with the New York City Office of Labor Relations, alleging that Diamond’s transfer was an "improper and punitive *655 transfer” violating article VI, § 1 (b), (e) and (f) of the collective bargaining agreement between the union and the City. The grievance was denied on the ground that the transfer was a business necessity. The union appealed the decision to the Deputy Chief Review Officer of the Office of Labor Relations, and the grievance was again rejected on the grounds that the transfer was not punitive but an exercise of the Department’s prerogative to staff and manage operations and that the union had failed to establish that the transfer had violated any of the Department’s rules, regulations or written policies.
The union later filed a Request for Arbitration with the Board of Collective Bargaining. The Board, with two of its seven members dissenting, granted arbitration to the extent of finding that the Union raised a substantial question as to whether Diamond’s transfer was a "disciplinary action” under article VI, § 1 (e) of the collective bargaining agreement. The Board determined that the union had demonstrated a sufficient nexus between Diamond’s transfer and the asserted punitive motivation of his supervisors and, therefore, established a sufficient predicate for arbitration. Additionally, the Board stated that the absence of written charges of incompetence or misconduct did not bar arbitration of Diamond’s claim.
The Sanitation Department initiated this proceeding under CPLR articles 75 and 78 seeking to annul the Board’s decision and permanently stay arbitration. It argued that the dispute was not within the scope of the arbitration clause and that arbitration of the dispute would violate public policy by restricting a municipal employer’s prerogative to deploy and manage its work force. Supreme Court denied and dismissed the Department’s petition, holding that the collective bargaining agreement contained a broad arbitration clause, that it was ambiguous as to whether written charges were a condition precedent to arbitration, and that the issue of the scope of the provision itself was an issue of contract interpretation and, thus, for the arbitrator to decide. The Appellate Division affirmed, holding that the Board’s determination was not arbitrary, capricious or an abuse of discretion. We now affirm and agree that the dispute is arbitrable.
The threshold for determining whether a valid, enforceable agreement to arbitrate exists between public employees and a public agency or entity is well established (Matter of Committee of Interns & Residents [Dinkins], 86 NY2d 478, 484; see also, Matter of Blackburne [Governor's Off. of Empl. Relations], 87 NY2d 660). It "must proceed in sequence on two levels by *656 answering the following inquiries: (1) are arbitration claims with respect to the particular subject matter of the dispute authorized * * * and (2) do the terms of the particular arbitration clause include this subject area?” (Matter of Committee of Interns & Residents [Dinkins], supra, at 484.) The determination of the Board of Collective Bargaining in this matter may not be upset unless it is arbitrary and capricious or an abuse of discretion, as the Board is the neutral adjudicative agency statutorily authorized to make specified determinations (Matter of Levitt v Board of Collective Bargaining, 79 NY2d 120, 127-128; see, Administrative Code of City of NY § 12-309 [a] [3]), or unless arbitration of the dispute offends public policy.
While public policy considerations may limit the rights of public employees to arbitrate their disputes (see, Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778), judicial intervention to stay arbitration on public policy grounds is exceptional and itself limited to circumstances specifically identified or rooted in statute or case law (Matter of Enlarged City School Dist. [Troy Teachers Assn.], 69 NY2d 905, 906, citing Matter of Sprinzen [Nomberg], 46 NY2d 623, 631; see also, Board of Educ. v Areman, 41 NY2d 527, 530-531).
We agree with the courts below that no statute or otherwise manifest public policy has been tendered that would bar arbitration of Diamond’s wrongful transfer claim. The Department’s suggestion, that a transfer decision is a nondelegable management function (see, Administrative Code § 12-307) and that the Department, as a public employer, enjoys a public policy presumption under Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.) (42 NY2d 509, 514) that it did not intend such disputes to be resolved in an arbitration forum, is incorrect. In this case, the relevant public policy considerations are not derived from the Taylor Law (Civil Service Law art 14), but rather are located in the New York City Collective Bargaining Law, under which the applicable collective bargaining agreement was negotiated (Administrative Code § 12-301 et seq.-, contrast, Matter of Blackbume [Governor’s Off. of Empl. Relations], 87 NY2d 660, supra).
The Collective Bargaining Law distinctively states that "[i]t is hereby declared to be the policy of the city to favor and encourage * * * on matters within the scope of collective bargaining, the use of impartial and independent tribunals to assist in resolving impasses in contract negotiations, and final, impartial arbitration of grievances between municipal agencies and certified employee organizations” (Administrative *657 Code § 12-302). This express statutory conferral, favoring the arbitration of disputes, invests the Board of Collective Bargaining with the authority to establish and manage dispute resolution proceedings between public employers and public employee organizations (Administrative Code § 12-312). Thus, the most pertinent and manifest public policy applicable here contradicts the Department’s argument on this ground.
The Department nevertheless presses the argument that Administrative Code § 12-307, which delineates the powers reserved to the City in its management capacity, precludes arbitration of this dispute. This Court has previously stated, however, that this statute does not "proscribe permissive bargaining of management prerogatives,” and that the statute does not declare any public policy that the City is not free to waive (City of New York v Uniformed Firefighters Assn., 58 NY2d 957, 958-959). Further, "[although terms and conditions of employment (subject to bargaining) and management prerogatives (exempt from bargaining) may be neatly separated in principle, the practical task of assigning a particular matter to one category or the other is often far more difficult. Indeed, in many instances a matter may partake of both categories, requiring a balancing of the interests involved” (Matter of Levitt v Board of Collective Bargaining, 79 NY2d, at 127, supra).
Applying these principles to the issues raised concerning the employee’s transfer strongly confirms our rejection of the Department’s public policy argument. The underlying dispute contains elements relevant both to the Department’s right to manage its work force and to the employee’s right to be protected from allegedly punitive personnel actions. Public policy derived from the applicable local law favors, rather than bars, the Board’s exercise of its particularized statutory duty to balance these competing interests by allowing for resolution of disputes through alternative mechanisms.
We must next turn to another attack by the Department against the Board’s determination. It argues that the union’s claim is not an arbitrable "grievance” under the terms of the collective bargaining agreement because of a lack of written charges. Article VI, § (1) (e) of the collective bargaining agreement defines an arbitrable "grievance” as a "claimed wrongful disciplinary action taken against a permanent employee * * * upon whom the agency head has served written charges of incompetency or misconduct while the employee is serving in the employee’s permanent title or which affects the employee’s permanent status.” This clause is not a broad arbitration pro *658 vision such as the one we considered in Board of Educ. v Barni (49 NY2d 311), and to that extent we disagree with the reasoning below, though not with the result. The arbitration clause here does not qualify as a broad type and does not expressly grant the arbitrator the power to determine the scope of substantive provisions of the collective bargaining agreement. Therefore, in reviewing the Board’s interpretation of the scope of this provision, we must look further to whether the Board’s particularized determination comports with the agreed-upon understanding of the parties concerning arbitrability.
The record contains support, based on past practice, for the Board’s application of a two-part test to this particular collective bargaining agreement to determine whether a transfer constitutes a grievance under this type of arbitration clause. First, any party seeking arbitration must allege that there is a factual nexus between the transfer and an asserted wrongful disciplinary action. Second, the grievant must introduce sufficient evidence to establish that there is a substantial issue that the transfer was related to a disciplinary or punitive purpose. The Board asserts that this dual threshold balances management’s right to transfer employees with an employee’s contractual right to arbitrate claimed wrongful disciplinary actions.
In this connection, the Department particularly challenges the Board’s finding of arbitrability on the ground that the employee was not served with written charges and, therefore, is not entitled to arbitration by the plain words of the collective bargaining agreement. Such a unilateral power to forestall invocation of the arbitration recourse is dubious at best as applied here. For in interpreting grievance clauses identical to the one in this collective bargaining agreement, the Board has consistently held that written charges are not a prerequisite to an employee’s arbitration rights, because the requirement for written charges was intended as a shield to protect employees and not as a sword to cut off arbitration (see, Board of Collective Bargaining, Decision No. B-52-89, at 10; Decision No. B-33-90, at 14-15; Decision No. B-33-88, at 17; Decision No. B-9-81, at 10). During the periods that the Board has rendered these decisions, the City and union have signed four collective bargaining agreements without changing the language of the arbitration clause. While the parties could negotiate the elimination of the written charges feature to clarify the arbitrability route, it is equally telling that "it was not irrational * * * to conclude that the parties’ conduct in the past, under similar agreements, *659 demonstrated their intent or expectations. * * * Thus it was not unreasonable to find that by renewing the agreement the parties intended to continue the practice followed in the past” (Rochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578, 583). As both the union and the City acquiesced in the Board’s determinations that disputes involving alleged punitive disciplinary transfers would be arbitrable despite the lack of written charges from the employer, we discern no basis to interfere with the practical implementation of the agreed-upon arbitration remedy and the understanding of the parties.
In sum, the Board’s determination to direct this dispute to be resolved by arbitration comports with specifically apt public policy considerations, does not transgress the particular features of the collective bargaining arbitration clause, and is a rationally supportable ruling.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Titone, Smith and Levine concur; Judge Ciparick taking no part.
Order affirmed, with costs.