OPINION OF THE COURT
Ciparick, J.
The Hatch Act, 5 USC § 1501 et seq., bars employees of any State agency that is "financed in whole or in part by loans or grants made by the United States or Federal agency” from running for elective office (5 USC § 1501 [4]; § 1502 [a] [3]). A violator is subject to discharge from employment (see, 5 USC § 1505 [2]; § 1506). If removal is warranted, the governmental employer must impose that sanction or subject itself to the loss of Federal funds equivalent to two years of the violator’s salary (see, 5 USC § 1505 [3]; § 1506 [a]).
Petitioner Elmer H. Blackburne violated the Hatch Act, 5 USC § 1502 (a) (3), when he ran for elective office while a State governmental employee, resulting in the termination of his employment. Blackburne subsequently filed a grievance alleging that he was terminated without regard to the procedural rights guaranteed to him under the governing collective bargaining agreement (CBA). The issue presented is whether Blackburne is entitled to arbitrate his claim, which he describes as an employee disciplinary matter within the scope of the arbitration clause contained in the CBA, or whether public policy bars arbitration.
I.
On July 5, 1991, Blackburne, an Alcoholism Program Specialist employed by respondent Office of Alcoholism and Substance Abuse Services (OASAS),[1] applied for a six-week leave of absence to seek the Democratic Party nomination for a New York City Council seat. In a memorandum, Blackburne’s *663 supervisor advised him that in the opinion of OASAS his candidacy violated the Hatch Act, that a leave of absence would not cure the violation, and that he should decide between pursuing the nomination or continuing his employment. According to OASAS, Blackburne could not legally pursue political office while employed by that agency. When the City Council election was subsequently postponed, Blackburne requested permission to delay a decision on resignation since his candidacy had become uncertain. OASAS responded that there was no reason "to deny his request pending resolution of the legality of the election by the Federal District Court.”
On August 1, 1991, Blackburne filed his statement of intent to be a Democratic Party candidate for City Council in the September 12, 1991 primary. On August 14, 1991, Blackburne formally renewed his request for a leave of absence. Although OASAS maintained that the Hatch Act barred Blackburne’s continued employment, it granted his request for an unpaid leave of absence while it solicited a ruling on the matter from the Office of Special Counsel (OSC) of the United States Merit Systems Protection Board (the Board), the agency charged with enforcement of the Hatch Act. In the interim, Blackburne lost the election. OSC subsequently charged Blackburne with a violation of the Hatch Act, 5 USC § 1502 (a) (3).
In accordance with 5 USC §§ 1504 and 1505, an administrative hearing was held. The Chief Administrative Law Judge found that Blackburne’s bid for a partisan elective office violated 5 USC § 1502 (a) (3) and recommended his discharge from employment with OASAS. Blackburne appealed by filing exceptions with the Board. In its Final Decision and Order, the Board adopted and incorporated the decision of the Chief Administrative Law Judge. The Board ordered respondent OASAS to "remove [Blackburne] from his position within 30 days * * * [or] be subject to the sanction of a withholding of federal funds, as provided at 5 U.S.C. § 1506.” OSC was directed to apprise the Board of Blackburne’s employment status within 60 days and to monitor Blackburne’s employment for the succeeding 18 months (see, 5 USC § 1506 [a]). The Board also informed the parties of their right to file a petition for review in United States District Court within 30 days (see, 5 USC § 1508).
By letter dated August 4, 1993, OASAS notified Blackburne that his employment was terminated effective August 6, 1993 in accordance with the Final Decision and Order of the Board. Blackburne interpreted this letter to be a "notice of discipline” *664 under article 33[2] of the collective bargaining agreement between petitioner Public Employees Federation (PEF), of which he was a member, and OASAS, and advised OASAS that he intended to file a grievance pursuant to article 34.[3] OASAS in turn informed Blackburne that he was discharged in accordance with the Board’s Final Decision and Order, and that the August 4, 1993 letter was not a "notice of discipline.”
Nevertheless, PEF filed a grievance on Blackburne’s behalf under article 34 of the CBA claiming that he was discharged without regard to the procedural rights guaranteed by article 33. OASAS rejected the grievance, declaring that the termination was outside the scope of the CBA and not the proper subject of a contract grievance. However, respondent The Governor’s Office of Employee Relations (GOER)[4] independently accepted PEF’s choice of an arbitrator and indicated it would contact the selected arbitrator to arrange a date for the hearing. Four months later, GOER determined that Blackburne was terminated as a matter of law and that his grievance was not arbitrable. GOER thereafter refused to process the grievance. Petitioners Blackburne and PEF subsequently instituted this proceeding pursuant to CPLR 7503 (a) to compel arbitration in accordance with article 34 of the CBA.
Supreme Court granted the petition and directed the parties to proceed to arbitration. Supreme Court found that the Hatch Act does not preempt the rights granted to Blackburne pursuant to the CBA and that the issue of whether Blackburne was denied the protection of article 33 is an arbitrable dispute. The Appellate Division reversed, holding that the exclusionary clause contained in section 34.1 bars arbitration of Blackburne’s grievance because the Hatch Act serves as the " 'other means of resolution * * * provided * * * by statute * * * applicable to the State’ ” (Matter of Blackburne [Governor’s Off. of Empl. Relations], 211 AD2d 13, 15). The Appellate Division further determined that arbitration would offend public policy as it "would significantly lessen the efficacy of the Hatch Act and frustrate its purpose and scope” (id., at 16 [citation omitted]). We now affirm.
*665 II.
The threshold determination of whether there is a valid agreement to arbitrate a dispute between a governmental employer and employee pursuant to CPLR 7503 (a) proceeds "in sequence on two levels” (Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.], 42 NY2d 509, 513; see also, Matter of Committee of Interns & Residents [Dinkins], 86 NY2d 478, 484; Matter of Franklin Cent. School [Franklin Teachers Assn.], 51 NY2d 348, 355). The first level of inquiry involves a determination of whether the subject of the claim sought to be arbitrated is the type authorized by the Taylor Law (codified as Civil Service Law art 14) (see, Matter of Acting Supt. of Schools of Liverpool Cent. School Dist., 42 NY2d, at 513, supra; see also, Binghamton Civ. Serv. Forum v City of Binghamton, 44 NY2d 23, 29). If a statute, decisional law or public policy precludes the governmental employer and employee from referring the dispute to arbitration, then the answer to this inquiry is no and the claim is not arbitrable (see, Matter of Acting Supt. of Schools of Liverpool Cent. School Dist., 42 NY2d, at 513, supra). In this situation, the court need not reach the second level of inquiry which requires a determination of whether the subject matter of the dispute sought to be arbitrated is within the scope of the particular arbitration clause. For the reasons that follow, we conclude that public policy enjoins arbitration of Blackburne’s grievance, halting our inquiry at level one (see, Matter of Acting Supt. of Schools of Liverpool Cent. School Dist, 42 NY2d, at 513, supra; Matter of Committee of Interns & Residents, 86 NY2d, at 484, supra).
Blackburne’s attempt to cast his grievance in terms of a denial by OASAS of the procedures guaranteed under article 33 of the CBA is unavailing in the face of the Board’s Final Decision and Order. The Final Decision and Order mandated that OASAS discharge Blackburne within 30 days; failure to do so would result in an order by the Board directing the United States Department of Health and Human Services to withhold grant moneys from OASAS. Whether to comply with the Board’s directive to discharge Blackburne, or not, and suffer the fiscal consequences, is a sovereign decision which as a matter of public policy "restrict[s] the freedom to arbitrate” (Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614, 616-617; see also, Board of Educ. v Areman, 41 NY2d 527, 531; Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 776-777; Matter of *666 Port Wash. Union Free School Dist. v Port Wash. Teachers Assn., 45 NY2d 411, 423 [Breitel, Ch. J., concurring]; accord, Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn., 49 NY2d 732, 734).
By enacting the Hatch Act, Congress sought to require public employees who administer or implement policies arid programs underwritten with Federal funds to abstain from politics (see, United Pub. Workers v Mitchell, 330 US 75, 102-103; Biller v United States Merit Sys. Protection Bd., 863 F2d 1079, 1089; Fela v United States, Merit Sys. Protection Bd., 730 F Supp 779, 784). As a means of implementing the Hatch Act, Congress conditioned the continued receipt of Federal moneys by State agencies, like OASAS, on an employee roster that does not include candidates for elective office (see, 5 USC § 1502 [a] [3]). Contravention of this condition not only implicates OASAS’s human resources, but also impacts OASAS’s operating budget because the decision not to remove a partisan employee yields a costly consequence: forfeiture of Federal funds equivalent to two years of the employee’s salary (see, 5 USC § 1506 [a]).
The Hatch Act’s mandate that the State employer either rid itself of politicians or lose Federal funds embodies an important public policy that can only be effectuated by a sovereign determination (compare, Matter of New York City Dept. of Sanitation v MacDonald, 87 NY2d 650, 656-657, [decided today]). As a matter of law, violations of the Hatch Act are punishable by either the employee’s removal from employment or the employer’s loss of Federal funds (see, 5 USC § 1505 [2]; § 1506 [a]). To permit an arbitrator to elect between these two options would amount to an impermissible delegation of the sovereign authority to procure, allocate and disburse Federal funds invested in the OASAS Commissioner.
Mental Hygiene Law § 19.09 (f) designates the OASAS Commissioner as the administrator of all funds, including Federal grants, provided to the State for alcoholism, substance abuse and chemical dependency services {see also, Mental Hygiene Law § 19.28 [a], [b], [d]; NY Const, art VII, § 7). Similarly, the Commissioner is responsible for filing applications to obtain Federal moneys, such as United States Department of Health and Human Services grants, with the Budget Director {see, State Finance Law § 53-a). By investing the Commissioner with the power to determine whether to procure funds and the authority to distribute those moneys to programs under OASAS’s jurisdiction, these statutes grant the Commissioner *667 control over OASAS’s funds and impose a measure of accountability (see, Anderson v Regan, 53 NY2d 356, 359-360; Matter of County of Oneida v Berle, 49 NY2d 515, 522-523). If Blackburne’s grievance proceeded to arbitration, the statutory duties conferred upon the OASAS Commissioner would be usurped by the arbitrator and the chain of control and accountability disrupted (see, Anderson v Regan, 53 NY2d, at 364, supra; Matter of Sprinzen [Nomberg], 46 NY2d 623, 631; cf., Binghamton Civ. Serv. Forum v City of Binghamton, 44 NY2d, at 30, supra). In effect, the threshold, sovereign determination whether OASAS should seek grant moneys from the United States Department of Health and Human Services would be rendered by the arbitrator. Further, delegation of this determination to an arbitrator would run afoul of the appropriation provision in the State Constitution (see, NY Const, art VII, § 7; see also, Anderson v Regan, 53 NY2d, at 365-366, supra).
Because public policy precludes arbitration of petitioner’s claim in the first instance, our inquiry concludes at level one (accord, Board of Educ. v Areman, 41 NY2d 527, supra; Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, supra; cf., Matter of Enlarged City School Dist. [Troy Teachers Assn.], 69 NY2d 905). Therefore, arbitration must be permanently stayed (CPLR 7503 [b]; see, Matter of Sprinzen [Nomberg], 46 NY2d, at 631, supra).
In view of the foregoing, petitioner’s remaining contentions are academic.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
Order affirmed, with costs.

. OASAS is the recipient of Federal moneys in the form of grants from the United States Department of Health and Human Services.

. Article 33 is the negotiated substitute for Civil Service Law §§ 75 and 76 providing for arbitration of employee disciplinary matters.

. Article 34 establishes the grievance and arbitration procedure for covered employees.

. GOER, on behalf of the Governor, is responsible for the negotiation and administration of CBAs (see, Executive Law §§ 650-654).