OPINION OF THE COURT
Harold Tompkins, J.
The issues before this court are whether the New York City Department of Investigation’s investigatory procedures are restricted by a labor contract between the City and the Uniformed Fire Officers Association, whether a determination of the Board of Collective Bargaining of the City of New York that this dispute is a subject for arbitration between the parties improperly impinges on public policy, whether the resolution of this issue is premature since the arbitration has not yet been held and whether the Board’s determination, that the claim that the Investigation Department was violating the collective bargaining agreement, is within the scope of the agreement and is subject to arbitration, should be upheld as reasonable and not arbitrary. These issues arise in the context of a determination by the Board of Collective Bargaining that the union’s claim that the City is violating the labor agreement by the method the Investigation Department uses to investigate claims of criminal conduct is a proper grievance under the contract and a fit subject for arbitration. The City has challenged this finding as beyond the scope of the Board’s authority.
PROCEDURAL BACKGROUND
The Department of Investigation is a separate[1] agency established by New York City Charter (Charter) chapter 34, with the power and responsibility to investigate the “affairs, functions, accounts, methods, personnel or efficiency of any [City] agency” (Charter § 803). The Commissioner’s jurisdiction to investigate extends to any person or entity that receives money or does business with the City. The Commissioner has the authority to compel testimony of witnesses, to receive evidence and to obtain documents (id., § 805; Matter of Dairymen’s League Coop. Assn., 274 App Div 591 [1st Dept 1948], affd 299 *938 NY 634 [1949]). The Commissioner has the responsibility of forwarding written reports to either the appropriate prosecutor, if allegations of criminal conduct are involved, or to the Board of Ethics if an actual or potential conflict of interest is involved. Under Charter § 1128, cooperation with an investigation is mandatory. The applicable City-wide collective bargaining agreement[2] includes provisions for individual employee rights under article XVII and arbitration of grievances under articles XVIII and XXI. The individual rights article includes provisions relating to interrogations, interviews, trials and hearings.[3] These protections include 10 days’ written prior notice, notice of the subject matter, requirements that where an employee is “a suspect in a departmental trial or investigation,” the employee must be advised of the right to refuse to answer questions, that the answers may not be used against him in criminal proceedings so long as they are truthful and that failure to answer renders him subject to dismissal. The employee must be advised of the right to counsel and the right to representation. If the employee invokes the right to counsel or representation, the matter must be adjourned at least two working days. There are restrictions on the scope of questioning as to personal behavior outside of work except as to matters pertaining to official business, extra departmental employment, conflict of interest, injuries or illness, residency, performance as volunteer firefighter or loss or improper use of departmental property. Additionally, nonsuspect employees are required to cooperate and their statements may not be used.
In February 1996, the Department of Investigation subpoenaed several fire officers in connection with an investigation of a false alarm that was allegedly to be used for a false claim of a line-of-duty injury for a fraudulent pension claim. On or about February 29, 1996, the Investigation Department interview occurred and the union representative was excluded over the objections of the union counsel. A firefighter later pleaded guilty to a crime. On February 14, 1996, a lieutenant *939 appeared pursuant to subpoena in connection with an interview concerned with pension fraud. The union counsel objected to inadequate notice under article XVII, the employee rights provision. On April 30, 1996, the union filed a request for arbitration of the grievance that stated the City was violating article XVII by the failure of the Investigation Department to abide by article XVII. The City challenged the arbitrability of the request. On or about October 28, 1997, the Board of Collective Bargaining issued its determination denying the City’s petition and holding that the applicability of article XVII to the interviews, examinations and other matters conducted by the Investigation Department was an issue of contract interpretation for the arbitrator. The Board directed that the matter proceed to arbitration and reserved the merits of the union’s grievance to the arbitrator. A dissenting opinion was issued that would have upheld the City’s position that arbitration was an improper violation of the public policy to eliminate corruption by restricting the authority of the Department of Investigation. The City filed this petition to set aside the Board’s determination on November 28, 1997. On March 17, 1998, the court granted the City’s application for a temporary restraining order enjoining the arbitration pending the hearing of the petition. On April 1, 1998, the court heard oral argument on the record on the City’s petition and continued the interim stay pending a determination of the petition.
REVIEW OF PUBLIC SECTOR LABOR DISPUTES
The general standard in reviewing determinations of administrative agencies is well settled. The court’s review is limited to whether the agency’s determination is arbitrary or capricious or contrary to law (see, Matter of Levitt v Board of Collective Bargaining, 79 NY2d 120 [1992]). The court cannot substitute its judgment for that of the agency and should defer to the specialized expertise of an administrative agency involved in the implementation and enforcement of a statute (supra; Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd., 48 NY2d 398 [1979]).
In the context of public sector labor relations, where the Taylor Law (codified as Civil Service Law art 14) and the New York City Collective Bargaining Law (Administrative Code of City of NY § 12-301 et seq.) impose on both the governmental employer and a certified employee organization (the union), a duty to bargain in good faith on the terms and conditions of employment, the Court of Appeals has adopted a different anal *940 ysis (see, Matter of Levitt v Board of Collective Bargaining, supra, at 126-127; Matter of Blackburne [Governor’s Off. of Empl. Relations], 87 NY2d 660, 665 [1996]). There is a two-step process in which the court must first determine whether the arbitration claims at issue are within the scope of the collective bargaining process and, secondly, whether the terms of the particular arbitration clause include the subject area (see, Matter of Committee of Interns & Residents [Dinkins], 86 NY2d 478 [1995]; Matter of New York City Dept. of Sanitation v MacDonald, 87 NY2d 650 [1996]). The initial question is a threshold in which the “courts must determine that there is nothing in statute, decisional law or public policy which would preclude the municipality and its employee or group of employees from referring the dispute to arbitration” (Matter of Committee of Interns & Residents [Dinkins], supra, at 484). If a law, public policy or case law prevents arbitration of a dispute, then the claim is not arbitrable (supra; Matter of Blackburne [Governor’s Off. of Empl. Relations], supra, at 665). The court need not reach the second issue, if the initial inquiry determines that the subject of the claim is not arbitrable.
While terms and conditions of employment are subject to bargaining and therefore to arbitration, management prerogatives are not subject to bargaining and an arbitration of management prerogatives is beyond the scope of the Board’s authority and must be prohibited (Matter of Levitt v Board of Collective Bargaining, supra, at 127). The determination into which category a particular matter belongs is highly complex (supra). There is also a strong preference for arbitration of collective bargaining disputes and the public policy exception to arbitrability of public sector labor disputes has been held to be a narrow one (see, Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.], 90 NY2d 364, 372 [1997]; Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist., 45 NY2d 898 [1978]).
In Professional, Clerical (supra), the Court held that promotional preference for certain members of an eligible list was an appropriate subject for arbitration against claims it violated the public policy of an appointing authority under Civil Service Law § 61 to select one of the three highest ranked candidates on an eligible list. In Committee of Interns (supra), it was held no public policy prohibited arbitration of a dispute involving a resident physician at a public hospital who sought indemnification in a civil lawsuit brought against him. Similarly, in New York City Dept, of Sanitation (supra), a *941 wrongful transfer claim of a civil engineer was determined not to encroach on management functions of the Sanitation Department.
In contrast, the claim in Blackburne (supra), by an employee who was discharged for seeking elective office in violation of 5 USC § 1502 (a) (3) (the Hatch Act), was found to violate the public policy embodied in the Hatch Act that public employees who administer or implement policies and programs with Federal funds abstain from political activity. Notably, this case involved an anticorruption measure. In Matter of City of New York v MacDonald (201 AD2d 258 [1st Dept 1994]), an attempt to confer grievance rights on probationary police officers was held to be an improper encroachment on the Police Commissioner’s disciplinary authority. Limitations on the School Board’s access to a teacher’s personnel file was found to violate the public policy of the School Board’s responsibility to employ only qualified teachers (see, Board of Educ. v Areman, 41 NY2d 527 [1977]).
The Department of Investigation plays a crucial role in investigating potential criminal activity by governmental employees or contractors, deterring corruption and avoiding potential conflicts of interest (see, Matter of Dairymen’s League Coop. Assn., 274 App Div 591, supra). The detection and deterrence of corruption in the ranks of the civil service serves the strong public policy of ensuring the integrity of government to the citizenry. The Department of Investigation has strong tools to enable it to accomplish this critical mission. These tools include the power to subpoena witnesses, to compel testimony, to demand documentary production and to hold hearings. The employee rights provisions would impose significant restrictions on the Department of Investigation’s activities by mandating the automatic immunization (use immunity) to individuals who are investigated, mandating the presence of a nonattorney union representative whose primary loyalty would be to the union rather than the individual, restricting investigations of off-duty conduct as well as numerous limitations. These restrictions and requirements would necessarily blunt the investigative tools that the Department of Investigation utilizes in its vital mission.
In sustaining a subpoena issued in connection with an investigation into the system of condemnation of real property, Chief Judge Benjamin Cardozo noted the “great importance” of the powers given to the Commissioner of Accounts (the predecessor of the Commissioner of Investigation) “for the efficient *942 administration of the huge machinery of government in the city of New York” (Matter of Edge Ho Holding Corp., 256 NY 374, 381 [1931]). He warned against an interpretation that would eviscerate the Commissioner’s ability to properly investigate matters (supra). While the public policy exception to the arbitrability of public sector labor disputes is narrow (see, Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.], supra, at 372), the core function of ensuring governmental integrity is a public policy sufficiently strong as to preclude referral of this dispute to arbitration (see, Matter of Blackburne [Governor’s Off. of Empl. Relations], supra). This important policy cannot be interrupted during an arbitration process and hence it is not premature for the court to address the City’s claim at this point rather than after a determination by the arbitrator.
The court therefore grants the City’s petition to set aside the Board of Collective Bargaining’s determination and to enjoin arbitration as beyond the scope of the Board’s authority.

. Mayor’s Executive Order No. 105 of December 26, 1986 transferred the Inspectors General of each city agency and placed them under the central authority of the Department of Investigation. They were relieved of authority for agency disciplinary matters. They retained authority for criminal investigation.

. Proposed amendments to the City-wide agreement (annexed to the union’s opposing paper as exhibit G) would “revise language concerning interviews outside normal supervisory chain of command to reflect that the provision does not apply to Department of Investigation inquiries.” While this would clarify the matter for future contracts, this proceeding involves whether the City can legitimately forego or restrict its ability to investigate potential criminal activity.

. The court notes that the terms of employee rights article XVII omit any mention of criminal investigations.