OPINION OF THE COURT
Arlene P. Bluth, J.
The petition from petitioner, United Federation of Teachers, Local 2, AFT, AFL-CIO (UFT), seeking to vacate and annul a determination of respondent New York City Board of Collective Bargaining (BCB) is denied, and this proceeding is dismissed.
This proceeding arises out of a BCB decision that found that UFT had breached the duty of fair representation to one of its union members, respondent Jose Morales. UFT brings this petition seeking to overturn BCB’s decision; UFT claims that its negligence, even gross negligence, does not constitute a breach of the duty of fair representation. However, because UFT did not admit its negligence or give any explanation whatsoever for its actions in failing to advance Mr. Morales’ grievance when UFT was before BCB, this court finds that it was not irrational for BCB to determine that UFT’s actions were arbitrary.
Why Morales was Fired
Morales was a member of UFT and employed as a Supervisor of School Security with the School Safety Division (SSD) of the New York Police Department (NYPD) for 21 years until he was terminated on July 15, 2009. Morales was fired due to disciplinary charges related to alleged financial mismanagement of a close friend’s assets. Morales considered this close friend, Vincent DeGioia, to be his “adoptive parent” and DeGioia had helped raise Morales.
DeGioia granted Morales a durable power of attorney on July 15, 2007, which was subsequently revoked on July 27, 2007. After the power of attorney was revoked, Morales was al *819 leged to have removed the contents of DeGioia’s safe deposit boxes, withdrawn $15,000 from DeGioia’s bank accounts and deposited DeGioia’s pension check into Morales’ account. Morales did not deny performing these acts. Instead, he claimed that he was unaware that his power of attorney was revoked. Morales claims that he was acting at DeGioia’s request. Morales also insists that all monies were returned to DeGioia. In February 2009, DeGioia’s niece wrote a letter to SSD stating that DeGioia viewed Morales as his son and that DeGioia had a penchant for making up stories involving his family members. DeGioia’s niece also described DeGioia as “an angry man with sadistic tendencies” and that Morales and his family were the only people DeGioia considered family.
The New York County District Attorney’s Office investigated these allegations and declined to pursue criminal charges against Morales.
The NYPD brought disciplinary charges against Morales, accusing him of four counts of prohibited conduct.
The Grievance Procedure and “Morales I”
Respondent City of New York and UFT are parties to a collective bargaining agreement that provides a four-step process for employees to assert grievances against disciplinary actions that concludes with binding arbitration. A step I conference was held on February 3, 2009 and Morales was represented by a UFT representative. After the conference, the NYPD told Morales that it was seeking his resignation or termination. After the step II hearing on June 18, 2009, the NYPD notified UFT that Morales was terminated.
In order to appeal a step II finding, the appeal must be filed in writing within 10 days of the determination. Neither UFT nor Morales filed a written appeal within this time period. Morales contends that he reached out to UFT on numerous occasions regarding his appeal throughout the summer of 2009 but UFT did not explain its inaction until December 2009. UFT contends that it told Morales that it was considering whether or not to file the appeal.
Morales then filed an improper practice petition (Morales I) with BOB on October 29, 2009 and amended this petition on December 22, 2009. Morales claimed that UFT had ignored him since his termination despite Morales’ numerous attempts to contact UFT.
On December 11, 2009, UFT filed a step III appeal of the July 15, 2009 step II termination of Morales, obviously well *820 past the deadline. UFT then filed an answer to the Morales I petition on January 11, 2010 and its answer to the amended Morales I petition on January 19, 2010.
On January 28, 2010, the City denied UFT’s December 11, 2009 step III hearing request as untimely. On or about April 30, 2010, the City and UFT agreed to let Morales proceed to step III. The City made this agreement on the condition that it reserved its right to raise a timeliness defense.
BCB issued a decision on the Morales I petition on May 25, 2010 in which it found that it could not yet determine if Morales had been denied a forum to challenge his termination. BCB dismissed Morales’ petition without prejudice to re-file following the conclusion of the grievance process.
On May 27, 2010, a step III conference was held. Morales’ step III appeal was denied as untimely on June 3, 2010. On June 14, 2010, UFT requested an arbitration (step IV) claiming that Morales was improperly terminated. On August 8, 2011, the arbitrator denied Morales’ grievance after concluding that the filing of the step III appeal was untimely. The parties disagree as to when Morales actually received notice of the arbitrator’s decision. Eventually, in a CPLR article 78 proceeding, a supreme court justice upheld the arbitrator’s decision because of the untimeliness issue.
Morales II—Morales Re-files His Petition
On December 14, 2011, Morales re-filed his improper practice petition (Morales II). UFT filed its response on December 29, 2011 and the City filed its response on January 18, 2012.
On June 28, 2012, BCB let the parties know that it was going to decide the Morales II petition. BCB issued a decision on the Morales II decision on July 10, 2012. BCB found that UFT had breached its duty of fair representation in handling Morales’ disciplinary proceedings. BCB claimed that UFT had a duty to inform Morales whether it would pursue his grievance beyond the step II hearing and that UFT’s failure to communicate with him breached its duty of fair representation. BCB also found that UFT never provided a reason for its failure to process the step III appeal. BCB claimed that these facts indicated that UFT’s actions were arbitrary.
BCB rejected the City’s argument that Morales had to show that UFT intended to undermine his grievance claim. BCB concluded that UFT and the NYPD should process Morales’ grievance to step IV and permit an arbitrator to make a deci *821 sion on the merits rather than on the timeliness issue. BCB also directed that UFT hire outside counsel for Morales to avoid a conflict of interest. BCB retained jurisdiction to consider any apportionment of damages or other issues arising from the arbitration.
On July 31, 2012, UFT requested that BCB reconsider the Morales II decision, but BCB denied this request on September 4, 2012. UFT brought the instant petition seeking to overturn BCB’s Morales II decision.[1]
Discussion
When reviewing a CPLR article 78 petition, “[t]he courts cannot interfere unless there is no rational basis for the exercise of discretion or the action complained of is arbitrary and capricious” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974] [internal quotation marks omitted]). A determination of the Board of Collective Bargaining “may not be upset unless it is arbitrary and capricious or an abuse of discretion, as the Board is the neutral adjudicative agency statutorily authorized to make specified determinations” (Matter of New York City Dept. of Sanitation v MacDonald, 87 NY2d 650, 656 [1996]). “[A]n administrative agency’s construction and interpretation of its own regulations and of the statute under which it functions is entitled to the greatest weight” (Matter of Herzog v Joy, 74 AD2d 372, 375 [1st Dept 1980]). “When an administrative agency is charged with implementing and enforcing the provisions of a particular statute, the courts will generally defer to the agency’s expertise and judgment regarding that statute” (District Council 37, Am. Fedn. of State, County & Mun. Empls., AFL-CIO v City of New York, 22 AD3d 279, 283 [1st Dept 2005]). “A court cannot simply substitute its judgment for that of an administrative agency when the agency’s determination is reasonable” (id. at 284).
The New York City Collective Bargaining Law (Administrative Code of City of NY, tit 12, ch 3 [NYCCBL]) holds that it is an improper practice for a public employee organization “to breach its duty of fair representation to public employees” (NYCCBL § 12-306 [b] [3]). It is well established that the duty of fair representation is breached “only when a union’s conduct *822 toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith” (Vaca v Sipes, 386 US 171, 190 [1967]). “[irresponsible or grossly negligent conduct may [not] form the basis for a union’s breach of the duty of fair representation” (Matter of Civil Serv. Empls. Assn. v Public Empl. Relations Bd., 132 AD2d 430, 432 [3d Dept 1987] [internal quotation marks omitted], affd 73 NY2d 796 [1988]). Instead, “there must be a showing that the activity, or lack thereof, which formed the basis of the charges against the union was deliberately invidious, arbitrary or founded in bad faith” (Matter of Sapadin v Board of Educ. of City of N.Y., 246 AD2d 359, 360 [1st Dept 1998] [internal quotation marks and citation omitted]). “[A] union’s actions are arbitrary only if, in light of the factual and legal landscape at the time of the union’s actions, the union’s behavior is so far outside a wide range of reasonableness . . . as to be irrational” (Air Line Pilots v O’Neill, 499 US 65, 67 [1991] [internal quotation marks and citation omitted]).
UFT Never Gave BCB Any Reason for UFT’s Failure to File a Timely Appeal
In the instant proceeding, UFT claims that BCB’s decision in Morales II was arbitrary and capricious. UFT argues that BCB did not apply the correct legal standard for a breach of the duty of fair representation. UFT asserts that Morales’ improper practice petition had to show that the union’s acts were arbitrary, discriminatory, or in bad faith. UFT claims that its failure to file a timely written request for an arbitration at step III of the grievance process was at worst negligent, which cannot form the basis of a breach of the duty of fair representation.
BCB and UFT cite the same standard for a breach of the duty of fair representation. Based on that standard, BCB concluded that UFT’s actions regarding Morales’ appeal of his step II termination were arbitrary. BCB found that UFT’s conduct was arbitrary because UFT failed to provide any explanation for its failure to submit a timely appeal from the step II determination. BCB noted that UFT’s actions were also arbitrary, in part, because UFT ignored a wrongful termination claim that had potential merit. BCB suggests that Morales’ claim might be meritorious because Morales never faced criminal charges and the letter from DeGioia’s niece evidences a strong relationship between DeGioia and Morales. BCB concluded that it could not supply a reason for UFT’s inaction *823 when no explanation was provided by UFT. BCB further found that UFT had an affirmative duty to inform Morales whether or not it would pursue a grievance on his behalf once UFT represented Morales during the first two stages of the grievance process.
UFT insists that its actions were merely negligent rather than arbitrary. However, UFT failed to present facts before BCB to demonstrate negligence or even gross negligence. In the instant proceeding, UFT submitted an affidavit from Morales’ union representative (Huart aff) that purports to demonstrate that UFT was negligent in the handling of Morales’ grievance process. However, the Huart affidavit was never submitted to BCB. “Judicial review of administrative determinations is confined to the facts and record adduced before the agency” (Matter of Featherstone v Franco, 95 NY2d 550, 554 [2000] [internal quotation marks and citations omitted]). Therefore, this court cannot consider the Huart affidavit when evaluating whether BCB had a rational basis for its decision.
UFT also claims that BCB’s decision should be overturned because BCB did not provide UFT with an evidentiary hearing. UFT argues that it was “waiting” for notice of a hearing before BCB. BCB claims that UFT never requested a hearing and that it held a conference concerning the Morales II petition on March 9, 2012. BCB maintains that UFT failed to provide an explanation for its failure to process a timely appeal at this conference. BCB also states that UFT provided no reason for its inaction after it received two weeks’ notice that the Morales II petition was on the agenda for BCB’s July 10, 2012 meeting.
After BCB issued its decision, UFT requested that BCB reconsider the Morales II decision on July 31, 2012. BCB argues that UFT again did not provide an explanation for its actions. On August 7, 2012, BCB informed UFT that BCB would address the request for reconsideration at its next board meeting, which took place on September 4, 2012. BCB denied UFT’s request for reconsideration. BCB notes that UFT failed to submit the Huart affidavit to BCB while UFT’s request for reconsideration was pending.
Pursuant to the rules of the New York City Office of Collective Bargaining, “[a]fter issue has been joined, the Board may decide the dispute on the papers filed, may direct that oral argument be held before it, may direct a hearing before a trial examiner, or may make such other disposition of the matter as it deems appropriate and proper” (Rules of City of NY Off of *824 Collective Bargaining [61 RCNY] § 1-07 [c] [8]). The rules make clear that BCB was not required to hold a hearing.
Further, UFT had an opportunity to submit an explanation for its actions when it responded to Morales’ petition. The rules also required UFT to provide “[a] statement of facts with numbered paragraphs setting forth the nature of the controversy” (Rules of City of NY Off of Collective Bargaining [61 RCNY] § 1-07 [c] [3] [i] [B]-[D]). UFT did not provide this information. UFT also declined to send the Huart affidavit to BCB, even though it was signed on August 8, 2012, while its request to reconsider BCB’s Morales II decision was pending. Therefore, it was reasonable for BCB to decide the petition without holding a hearing.
UFT also claims that this court must decide whether BCB’s decision is supported by substantial evidence. However, only the Appellate Division can address the substantial evidence issue (see CPLR 7804 [g]; 7803 [4]). “Under CPLR 7803 [4] the substantial evidence test applies only where a hearing has been held and evidence taken pursuant to direction by law” (Matter of Colton v Berman, 21 NY2d 322, 329 [1967] [internal quotation marks omitted]). Here, BCB did not hold a hearing or a quasi-judicial hearing that would require this court to transfer the matter to the Appellate Division. Therefore, this court can only establish whether BCB’s determination was arbitrary or capricious (id.).
Based on the foregoing, this court concludes that BCB’s decision was reasonable. Although UFT may disagree with BCB’s application of the relevant case law, the court must grant deference to BCB’s expertise and judgment in handling improper practice petitions under the NYCCBL. The court cannot substitute its own judgment for BCB’s opinion unless it is irrational. Here, both UFT and BCB cited identical standards for a breach of the duty of fair representation. That standard provides that “arbitrary” is a separate basis for a breach of the duty of fair representation.
Both UFT and BCB acknowledge that negligence cannot form the basis of a breach of the duty of fair representation. However, UFT did not submit evidence to BCB that established negligence. UFT had multiple opportunities to provide explanations for its mishandling of Morales’ appeal. UFT failed to supply BCB with the Huart affidavit or other facts that could have demonstrated that its actions constituted negligence. Rather than assume UFT’s negligence, BCB concluded that UFT’s actions were arbitrary; this was not at all irrational.
*825 There appears to be few cases with similar facts to the instant proceeding. The cases cited by UFT do not address unexplained union actions. The most analogous case cited by BCB held that “a union may breach its duty when it fails to process a meritorious grievance in a timely fashion with the consequence that arbitration on the merits is precluded” (Young v United States Postal Serv., 907 F2d 305, 308 [2d Cir 1990] [holding that plaintiff established a breach of the duty of fair representation and ruling that plaintiff was terminated for just cause]). The Second Circuit ruled that the plaintiff “showed that the Union thought her grievance was valid but was late in filing” and that defendant “Postal Service had to produce evidence that the Union’s tardy filing was based upon a justifiable reason” (id. at 308-309).[2]
Although the plaintiff in Young lost on the merits, the facts relating to the breach of the duty of fair representation are analogous to the instant proceeding. UFT’s failure to timely process Morales’ grievance prevented Morales from receiving an arbitration on the merits. Morales demonstrated that UFT processed his grievance through arbitration (step IV), thereby suggesting that UFT believed the grievance was meritorious.
Because UFT failed to produce evidence that it had a justifiable reason—or even a negligent reason—for its late appeal of the step II termination, this court is unable to find that BCB’s Morales II decision was arbitrary and capricious.
Accordingly, it is ordered and adjudged that the petition of petitioner United Federation of Teachers, Local 2, AFT, AFL-CIO is denied and the proceeding is dismissed.

. The City brought a related proceeding seeking to overturn the same BCB decision in City of New York v Morales, index No. 401937/2012. That case was never consolidated with the instant matter and a separate decision is issued today.

. In Young, the plaintiffs union was not a party to the proceedings.